**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TC TECHNOLOGY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 16-153-RGA |
| v. | ) |
| | ) REDACTED |
| SPRINT CORPORATION AND SPRINT | ) PUBLIC VERSION |
| SPECTRUM, L.P., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO SPRINT'S
<u>MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS</u>**

Of Counsel:

Lawrence J. Gotts
Saswat Misra
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200
Lawrence.Gotts@lw.com
Saswat.Misra@lw.com

Stephanie N. Solomon
Kevin L. Mallen
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
(212) 906-1200
Stephanie.Solomon@lw.com
Kevin.Mallen@lw.com

Anant K. Saraswat
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000
Anant.Saraswat@lw.com

Kelly E. Farnan (#4395)
Katharine L. Mowery (#5629)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
Farnan@rlf.com
Mowery@rlf.com

*Attorneys for Plaintiff TC Technology LLC*

David S. Benyacar
Daniel L. Reisner
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
david.benyacar@arnoldporter.com
daniel.reisner@arnoldporter.com


Dated: March 28, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................2

        A.      TWC, Cox And TC Tech Jointly Seek Legal Advice On Patent And
                Potential Lawsuit ......................................................................................2

        B.      Sprint Challenges TC Tech, Cox And TWC's Privilege Claims ............3

III.    LEGAL STANDARD............................................................................................4

IV.     ANALYSIS...........................................................................................................5

        A.      The Court Should Uphold TC Tech's, TWC's And Cox's Privilege ......5

                1.      TWC's And Cox's Legal Communications Prior To The Formation
                        Of TC Tech Are Protected By The Common Interest Privilege ..................5

                        a.      Cox And TWC Shared A Common Legal Interest .........................7

                        b.      Cox And TWC's Interests Were Aligned—Not Adverse...............9

                        c.      Cox And TWC Were Represented By Separate Counsel .............11

                2.      Legal Communications Between Mr. Block And Mr. Delgado
                        After The Formation Of TC Tech Are Privileged Communications
                        Of TC Tech And/Or Protected By Common Interest Privilege.................12

                3.      Legal Communications Involving Outside Counsel Are Also
                        Protected By Joint Client Privilege............................................................14

                4.      Many Of The Challenged Documents Are Separately Protected As
                        Attorney Work Product...............................................................................16

        B.      The Court Should Reject Sprint's Request For *In Camera* Review ......17

V.      CONCLUSION....................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*3Com Corp. v. Diamond II Holdings, Inc.*,
2010 WL 2280734 (Del. Ch. May 31, 2010) ...................................................... 6, 9-11

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
2018 WL 798731 (D. Del. Feb. 9, 2018) ................................................................8

*Al-Yusr Townsend & Bottum Co. v. United Mid E. Co.*,
1995 WL 592548 (E.D. Pa. Oct. 4, 1995)..............................................................14

*Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*,
805 F.2d 120 (3d Cir. 1986)...................................................................................15

*Cent. Baptist Church of Albany Ga. Inc. v. Church Mut. Ins. Co.*,
2017 U.S. Dist. LEXIS 199782 (M.D. Ga. Dec. 5, 2017) ......................................17

*Crissman v. Dover Downs Entm't Inc.*,
289 F.3d 231 (3d Cir. 2002) (Rosenn, J., dissenting) .............................................5

*First Nat. Bank of Louisville v. Lustig*,
No. 89-202, 1989 WL 126511 (E.D. La. Oct. 18, 1989) ........................................17

*In re Fresh & Process Potatoes Antitrust Litig.*,
2014 WL 2435581 (D. Idaho May 30, 2014) .........................................................14

*In re Gen. Motors LLC*,
2015 WL 7574460 (S.D.N.Y. Nov. 25, 2015)........................................................17

*Info-Hold, Inc. v. Trusonic, Inc.*,
2008 WL 2949399 (S.D. Ohio Aug. 30, 2008)........................................................12

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
2010 WL 9546391 (D. Del. Aug. 15, 2013) ...........................................................12

*King Drug Co. of Florence v. Cephalon, Inc.*,
2011 WL 2623306 (E.D. Pa. July 5, 2011)..............................................................8

*Leader Techs., Inc. v. Facebook, Inc.*,
719 F. Supp. 2d 373 (D. Del. 2010).........................................................................8

*Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*,
845 F.2d 1177 (2d Cir. 1988)..................................................................................17

ii

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
   886 F. Supp. 2d 466 (D. Del. 2012) ................................................................5, 16

*McLane Foodservice, Inc. v. Ready Pac Produce, Inc.*,
   2012 WL 1981559 (D.N.J. June 1, 2012) ...............................................................10

*Mine Safety Appliances Co. v. N. River Ins. Co.*,
   73 F. Supp. 3d 544 (W.D. Pa. 2014) ........................................................................8

*MobileMedia Ideas, LLC v. Apple Inc.*,
   890 F. Supp. 2d 508 (D. Del. 2012) .....................................................................6, 9

*Motley v. Marathon Oil Co.*,
   71 F.3d 1547 (10th Cir. 1995) ................................................................................18

*In re NC Swine Farm Nuisance Litig.*,
   2017 WL 2313470 (E.D.N.C. May 26, 2017) .........................................................17

*Net2Phone, Inc. v. Ebay, Inc.*,
   2008 WL 8183817 (D.N.J. June 26, 2008) ...............................................................8

*Novartis v. Abbott Labs.*,
   203 F.R.D. 159 (D. Del. 2001) ...............................................................................16

*In re Processed Egg Prod. Antitrust Litig.*,
   278 F.R.D. 112 (E.D. Pa. 2011).........................................................................5, 13

*In re Regents of Univ. of California*,
   101 F.3d 1386 (Fed. Cir. 1996).............................................................................8, 9

*Rembrandt Techs., L.P. v. Harris Corp.*,
   2009 WL 402332 (Del. Super. Ct. Feb. 12, 2009)......................................... 6-8, 12

*Rembrandt v. Apple*,
   2016 WL 427363 (N.D. Cal. Feb. 4, 2016) ..............................................................6

*Resolution Trust Corp. v. Fidelity & Deposit Co.*,
   1995 U.S. Dist. LEXIS 21903 (D.N.J. Apr. 27, 1995) ...........................................10

*Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*,
   150 F.R.D. 648 (N.D. Cal. 1993)..................................................................... 1-2, 15

*TD Bank v. Hill*,
   2014 WL 12617548 (D.N.J. Aug. 20, 2014) ...........................................................11

*In re Teleglobe Commc'ns Corp.*,
   493 F.3d 345 (3d Cir. 2007).......................................................... 4, 11-12, 14

*Trans-Western Petroleum, Inc. v. Wolverine Gas & Oil Corp.*,
   2011 WL 6318528 (D. Utah Dec. 15, 2011)...................................................................1, 5, 6, 9

*Rabushka ex rel. U.S. v. Crane Co.*,
   122 F.3d 559 (8th Cir. 1997) ...........................................................................................18

*United States v. BDO Seidman, LLP*,
   492 F.3d 806 (7th Cir. 2007) ..........................................................................................1, 6

*United States v. Montevecchio*,
   645 F. Supp. 497 (W.D. Pa. 1986)....................................................................................15

*Union Carbide v. Dow*,
   619 F. Supp. 1036 (D. Del. 1985)......................................................................................6

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
   707 F. Supp. 1429 (D. Del. 1989)......................................................................................18

## I.    INTRODUCTION

Sprint does not deny that TC Tech, TWC and Cox were working cooperatively towards the shared goal of obtaining and enforcing the '488 Patent, nor that the in-house and outside counsel for this joint venture sought, provided and shared legal advice in their pursuit of that goal.    Rather, Sprint argues that *none* of the communications within the joint venture are privileged because (1) TWC and Cox were third parties to one another, thereby breaking privilege, and (2) Sprint conjectures that the privilege log may be inaccurate in describing the emails as relating to legal, rather than business, advice.    Neither argument has merit.

TWC and Cox (and later TC Tech) were all members of the same joint venture pursuing a common goal of obtaining, analyzing, enforcing and litigating the '488 Patent.    Courts recognize the attorney-client privilege attaches to such communications on multiple grounds.    First, "[t]he common-interest doctrine is applicable to joint ventures."    *Trans-Western Petroleum, Inc. v. Wolverine Gas & Oil Corp.*, 2011 WL 6318528, at *4 (D. Utah Dec. 15, 2011).    That's because "joint venturers, no less than individuals, benefit from planning their activities based on sound legal advice predicated upon open communication."    *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007); *see also* Part IV.A.1, *infra*.    Further, courts have found that, because a joint venture can only act through its members (much as a corporation can only act through its employees), the attorney-client privilege attaches to communications between and among the members of a joint venture on that ground as well.    *See* Part IV.A.2, *infra.*    Finally, once TC Tech, TWC and Cox began jointly consulting outside counsel to represent them in possible litigation, TC Tech, TWC and Cox's communications were equally protected by the joint-client privilege.    *See* Part IV.A.3, *infra.*    "The principal purpose of the joint client privilege is, similarly, to encourage the fullest possible communication between joint clients—and between them and their joint lawyer—with respect to the joint representation."    *Sky Valley Ltd.*

1

*P'ship v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648, 653 (N.D. Cal. 1993). These doctrines fully support the conclusion that communications within a joint venture are privileged.

## II. BACKGROUND

### A. TWC, Cox And TC Tech Jointly Seek Legal Advice On Patent And Potential Lawsuit

In December 2011, Sprint sued Cox and TWC (among others) for allegedly infringing Sprint's VoIP digital phone patents (the "VoIP litigation"). ███████████████ ██████████████████████████████████████████████ (Block Decl. ¶¶ 8-9 & Ex. A.) In early 2012, Cox and TWC began considering the joint acquisition of the '488 Patent from the cable industry's R&D consortium, CableLabs. (Delgado Decl. ¶ 7; Block Decl. ¶ 10.) Cox and TWC were acting as joint venturers and shared a common legal interest in obtaining a strong and enforceable patent. (Delgado Decl. ¶¶ 8-9; Block Decl. ¶ 11.) Both Marcus Delgado, Cox's IP counsel, and Andy Block, TWC's IP counsel, contemporaneously understood and believed their legal communications would be privileged because of this common interest, and ██████████████████████ ███████████████████ (Delgado Decl. ¶¶ 10-12, 14; Block Decl. ¶¶ 12-13.)

On March 26, 2012, Cox and TWC formed a new, jointly-owned company, TC Tech, to acquire, own and enforce intellectual property, including the '488 Patent. TC Tech has no separate employees. ████████████████████████ ████████████████████████████████████████ ████████████████████████████████ (Delgado Decl. Ex. A, at Art. 6.) Thus, after the creation of TC Tech, both TWC and Cox understood that when their in-house counsel sought or gave legal advice related to TC Tech, the '488 Patent, or this litigation, they were doing so on behalf of TC Tech in their capacity as a member company. (Delgado Decl. ¶¶

2

19-21; Block Decl. ¶¶ 21-24.)  In addition, TWC, Cox and TC Tech all had a common legal interest in obtaining legal advice on the '488 Patent and this litigation, and so in-house counsel believed that legal advice could flow freely among TWC, Cox and TC Tech without waiver. (Delgado Decl. ¶¶ 22-23; Block Decl. ¶¶ 25-26.)  On March 30, 2012, TC Tech purchased the '488 Patent from CableLabs.  ███████████████████████████████████

███████████████████  (Delgado Decl. ¶¶ 24, Ex. B; Block Decl. ¶ 27.)  Following the purchase, TC Tech, through the in-house counsel of its member companies TWC and Cox, continued to seek and receive legal advice regarding the '488 Patent and potential litigation.

In Spring 2013, TC Tech, Cox and TWC began jointly soliciting advice and pitches from outside law firms to jointly represent them in possible litigation of the '488 Patent.  (Delgado Decl. ¶ 26; Block Decl. ¶ 30.)  ███████████████████████

███████████████████████████████████████████

███████████  ██████  █████████████  ███  ████████  ████  █████████  ████████

███████████  (Delgado Decl. Ex. D.)  In October 2015, TWC and Cox jointly met with Latham, and formally retained them in January 2016.  ████████████████████████

████████████████████████████████████  (Delgado

Decl. ¶ 30; Block Decl. ¶ 33.)  TC Tech filed suit on March 10, 2016, and TC Tech, Cox and TWC have continued their joint client and common interest relationships in cooperatively litigating this case through shared counsel.  (Delgado Decl. ¶¶ 32-35; Block Decl. ¶ 35.)

**B.  Sprint Challenges TC Tech, Cox And TWC's Privilege Claims**

As part of this joint litigation effort, Cox and Charter served a joint privilege log in December 2017.  Shortly thereafter, Sprint filed a letter brief arguing that Cox and TWC were third parties to one another, and so their discussions broke privilege.  (D.I. 142.)  During the hearing, Sprint also claimed it was challenging the sufficiency of the privilege log.  (D.I. 149 at

3

18:7-19.)  The Court ordered the parties to "talk between each other first" about the sufficiency of the log, and allowed Sprint to file a formal motion if disputes remained.  (*Id*. at 28:21-25.) Following the hearing, Cox and Charter offered to meet and confer with Sprint on what additional information Sprint believed it needed to assess the privilege claims.  (Solomon Decl. Ex. E.)  Sprint refused, now stating that the descriptions were sufficient.  (Solomon Decl. Ex. F.) TC Tech, Cox and Charter nonetheless voluntarily supplemented both (1) the interrogatory response ███████████████████████████████████████, and (2) their joint privilege log, ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ (Solomon Decl. ¶ 17.)  Counsel for Cox and Charter also undertook, at Sprint's request, a detailed review of each and every document on Cox and Charter's privilege log to determine whether there were any documents related to business communications that could be partially produced in redacted form, and produced 52 additional documents from Cox and Charter's privilege log.  (*Id*. ¶ 15.)

Despite these efforts, Sprint moves to compel hundreds of Charter's and Cox's privileged documents because (1) Sprint claims TC Tech, TWC and Cox do not share a common legal or joint client interest, and (2) Sprint does not trust that the privilege log descriptions are accurate in stating that the emails relate to legal, rather than business, advice.

## III.    LEGAL STANDARD

"The attorney-client privilege protects communications between attorneys and clients from compelled disclosure."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359-60 (3d Cir. 2007).  The privilege "applies to any communication that satisfies the following elements:  It must be '(1) a communication, (2) made between privileged persons, (3) in confidence, (4) for the purpose of obtaining or providing legal assistance for the client.'"  *Id.* (quoting Restatement

4

(3d) of the Law Governing Lawyers, § 68 (2000)). The law recognizes that the attorney-client privilege also attaches to communications within joint ventures, either under the common interest doctrine, *Trans-Western*, 2011 WL 6318528, at *4, or because it is considered a single corporate entity for privilege purposes, *In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. 112 (E.D. Pa. 2011). When two or more entities request legal advice from a common attorney (as part of a joint venture or not), those discussions are independently protected by the joint-client privilege. *Magnetar Techs. Corp. v. Six Flags*, 886 F. Supp. 2d 466, 479 (D. Del. 2012).

## IV. ANALYSIS

### A. The Court Should Uphold TC Tech's, TWC's And Cox's Privilege

Sprint challenges emails between Mr. Block and Mr. Delgado because Sprint contends that TWC and Cox are third parties to one another and do not share a common legal interest or joint-client interest for any purpose, even when they were jointly seeking and discussing legal advice regarding the '488 Patent, the formation of the jointly-owned holding company that purchased the '488 Patent or preparation for this litigation. Sprint's arguments are unpersuasive.

#### 1. TWC's And Cox's Legal Communications Prior To The Formation Of TC Tech Are Protected By The Common Interest Privilege

Attorney-client communications between TWC and Cox prior to the formation of TC Tech are protected by the common interest privilege because TWC and Cox were joint venturers.

"A joint venture is a special combination of two or more persons, whether corporate, individual or otherwise, formed for some specific venture in which a profit is jointly sought without the parties designating themselves as an actual partnership or corporation." *Crissman v. Dover Downs*, 289 F.3d 231, 250 (3d Cir. 2002) (Rosenn, J., dissenting) (quoting Williston on Contracts § 36:9 (4th ed.)). Here, prior to the formation of TC Tech, TWC and Cox were acting as joint venturers in considering a potential joint acquisition of the '488 Patent and creating a

5

legal entity with which to purchase it.  (Delgado Decl. ¶ 14; Block Decl. ¶ 17.)  As explained in the declarations, the challenged emails were exchanged for the purpose of seeking and providing legal advice for this joint venture.  (Delgado Decl. ¶ 14; Block Decl. ¶¶ 17, 42-44.)

Federal law is clear that the common interest doctrine applies to entities that have privileged communications with one another as part of a joint venture.  *See MobileMedia Ideas, LLC v. Apple Inc.*, 890 F. Supp. 2d 508 (D. Del. 2012) (common interest doctrine applied to communications between joint venturers forming LLC to obtain and enforce patents); *see also Trans-Western*, 2011 WL 6318528, at *4.  "[J]oint venturers, no less than individuals, benefit from planning their activities based on sound legal advice predicated upon open communication."  *BDO Seidman*, 492 F.3d at 816.  "In the transactional context, 'common interest' has been defined as an interest 'so parallel and non-adverse that, at least with respect to the transaction involved, the two parties may be regarded as acting as joint venturers."  *3Com Corp. v. Diamond II Holdings, Inc.*, 2010 WL 2280734, at *7 (Del. Ch. May 31, 2010) (brackets omitted).  TWC and Cox shared an interest in obtaining legal advice on the '488 Patent and the formation of TC Tech that was "so parallel and non-adverse" that they should be considered joint venturers,[1] which means their communications with one another are privileged.

Sprint does not appear to dispute that Cox and TWC were in fact acting as joint

---

[1] Sprint wrongly suggests there could be no joint venture until TC Tech was formed.  (Br. at 12-13.) But the whole point of the joint venture doctrine is to recognize a "common interest" in the transactional context between two separate legal entities, even if they *never* create a new, joint entity.  *See Rembrandt Techs. v. Harris Corp.*, 2009 WL 402332, at *6-8 (Del. Super. Ct. Feb. 12, 2009) (common interest existed between joint venturers who considered creating a shell company to acquire patent, but ultimately did not).  Sprint's cases do not suggest otherwise; rather, they found no common interest prior to a formal agreement because the parties' interests were adverse, rather than aligned, at that point in time.  *See Union Carbide v. Dow*, 619 F. Supp. 1036, 1050 (D. Del. 1985) (no common interest prior to licensing agreement because parties were "directly in conflict with one another" at that point in time); *Rembrandt v. Apple*, 2016 WL 427363 (N.D. Cal. Feb. 4, 2016) (no common interest prior to licensing agreement because Rembrandt and Apple's interests were adverse).  That's not the situation here.

venturers. Instead, Sprint argues that sharing the attorney-client communications between those joint venturers destroyed privilege because (1) Cox and TWC did not share a common legal interest, (2) Cox and TWC's interests were actually adverse, and (3) Cox and TWC were not represented by separate counsel.  None of these arguments has merit.

### a.  Cox And TWC Shared A Common Legal Interest

As discussed above, as joint venturers, TWC and Cox (and later, TC Tech) shared a common legal interest in seeking and receiving legal advice related to (1) obtaining a strong and enforceable patent, (2) forming a legal entity to obtain and enforce that patent, and (3) engaging outside counsel to litigate Sprint's infringement of that patent.  Courts routinely find these interests to be legal in nature and sufficient to support the common interest privilege.

In *Rembrandt v. Harris*, for example, the court found a sufficient common legal interest among members of a "patent assertion team," whose sole purpose was to find, purchase and monetize patents.  2009 WL 402332, at *3.  In that case, two individuals, Mr. Dowling and Wasterlund, partnered to "engage in extensive patent mining."  *Id.* at *2.  The Dowling/Wasterlund duo then approached Paradyne to "form[] a venture to assert Paradyne's patent portfolio."  *Id.* at *2.  Dowling/Wasterlund and Paradyne later approached Rembrandt, a non-practicing entity, to pursue a "joint venture relating to the assertion of Paradyne's patent portfolio."  *Id.* at *3.  The three entities then formed a "patent assertion team [to] purchase and enforce the Paradyne patents," and each member retained a financial interest.  *Id.* at *3.

The defendant, Harris, objected that these early communications among the three parties were not privileged, arguing "the parties can claim no common *legal* interest as they were merely involved in and communicating about a proposed *business* arrangement."  *Id.* at *6 (emphases added).  The Court disagreed, explaining that the parties had a "common legal interest . . . [in] their agreement to enforce and exploit the Paradyne patents," and specifically cited the fact that

7

the parties themselves "freely discussed licensing and litigation strategy, expecting those conversations to be protected by the common interest and work product doctrines." *Id.* at *3, *7.

Here too, Cox and TWC understood and believed that they had a common legal interest, and, in reliance upon that belief, freely discussed licensing and litigation strategy. (Delgado Decl. ¶¶ 8-12, 14; Block Decl. ¶¶ 11-14, 17.)  The applicability of the common interest doctrine is even clearer than in *Rembrandt* because TWC and Cox are not trying to extend the privilege to cover emails with the seller of the patent (CableLabs).  Rather, TWC and Cox are only asking the Court to uphold the privilege as to the group that was jointly purchasing the '488 Patent.[2]

Sprint's cases do not suggest otherwise.  They merely hold that a passive financial interest in the outcome of a litigation, *standing alone*, is not sufficient to establish a common legal interest.  In each of Sprint's cases there is one party actively participating in litigation and another entity (a litigation financer,[3] a company's supplier,[4] a potential indemnitor,[5] a shareholder[6]) who is merely passively receiving updates because they have a "rooting" interest in seeing one side win.  That is not the situation here.  From day one, Cox and TWC have been actively and cooperatively working together as joint venturers to evaluate, obtain and enforce the

---

[2] The Federal Circuit has held that a party with an exclusive option to purchase a pending patent was "allied in a common legal cause" with the inventor because "[b]oth parties had the same interest in obtaining strong and enforceable patents."  *In re Regents of Univ. of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996).

[3] *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731 (D. Del. Feb. 9, 2018) (no common interest in communications sent with "purpose of obtaining a loan" from litigation funding company); *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373 (D. Del. 2010).

[4] *King Drug Co. of Florence v. Cephalon, Inc.*, 2011 WL 2623306, at *5 (E.D. Pa. July 5, 2011) (no common interest where supplier "affirmatively disavowed" that it was part of defense group, but recognizing common interest would have applied if the supplier had been "actively involved in the . . . litigation" or "part of a joint, ongoing, coordinated defense strategy").

[5] *See Mine Safety Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544, 575 (W.D. Pa. 2014).

[6] *Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817 (D.N.J. June 26, 2008) (an "indirect" financial interest in patents standing alone was not sufficient to establish common legal interest).

8

'488 Patent; their discussion of legal advice was part of and in furtherance of that joint venture. Not one of Sprint's cited cases deals with a situation involving joint venturers like this. And in these situations, privilege is clear. *See Trans-Western*, 2011 WL 6318528, at *4.[7]

### b. Cox And TWC's Interests Were Aligned—Not Adverse

Sprint next appears to argue that Cox and TWC had a "potentially conflicted relationship" on other issues that defeats their joint interest. (Br. at 10.) This has no basis in fact. Cox and TWC's interests were aligned in jointly seeking and obtaining legal advice regarding patent and entity formation issues. (Delgado Decl. at ¶¶ 8-12, 14; Block Decl. at ¶¶ 11-14, 16-17.)

In response, Sprint argues that Cox and TWC's interests were not sufficiently aligned because "Cox and TWC were each only interested in the patent for its 'relevance' to their respective litigations with Sprint." (Br. at 9-10.) Cox and TWC were co-defendants and both active members of an existing joint defense group who jointly decided to purchase a patent to advance their common litigation strategy. If anything, this supports—not undermines—the joint nature of their interest. Moreover, the possibility that one party may settle the VoIP litigation with Sprint first does not destroy the common interest privilege. Were that so, no co-defendants could ever form a joint defense group, or have a common legal interest because there is *always* an incentive for one defendant to settle or plead guilty and cooperate in exchange for more lenient treatment. Sprint's proposed exception would therefore swallow the rule.[8]

---

[7] Sprint incorrectly suggests that TWC and Cox's monetary interest destroys privilege. *See id.*; *see also, e.g.*, *MobileMedia*, 890 F. Supp. 2d at 515 ("[A]n overlap of commercial and legal interests . . . . does not negate the . . . community of interest."); *In re Regents of Univ. of California*, 101 F.3d at 1390 (fact that the inventor and the potential licensee each stood to gain money if the patent issued did not defeat the common legal interest.)*; 3Com*, 2010 WL 2280734, at *1, *7-8 (Huawei's 16.5% financial interest in Newco supported finding the two companies shared a common legal interest).

[8] Similarly, the fact that Cox ultimately settled with Sprint in 2017 does not retroactively destroy

9

Further, Sprint's argument rests on a fundamental misunderstanding of the law. Sprint appears to claim that if the parties' interests are not aligned with respect to settlement (or any other issue), such misalignment destroys any common interest, even with respect to communications in which Cox and TWC's interests are aligned. That is not the law. As Sprint's own cases acknowledge, the common interest doctrine does not require that the parties' interests be "perfectly aligned"; indeed, the parties may even be "adversaries as to some issues" so long as they share a common interest with respect to the documents at issue. *McLane Foodservice, Inc. v. Ready Pac Produce, Inc.*, 2012 WL 1981559, at *6 (D.N.J. June 1, 2012). In *McLane*, for example, the defendants were clearly adversaries, as they blamed each other for contaminated lettuce they sold to Taco Bell. *Id.* at *2. Nonetheless, the court recognized that, to the extent their attorney-client communications related to whether the lettuce caused the e-coli break out at all, the parties' interests were aligned and the common interest doctrine applied. *Id.* at *6. Accordingly, even if Cox and TWC were potentially conflicted as to certain issues (which they were not), any potential conflict does not destroy the separate, common legal interest in seeking legal advice and forming a joint litigation strategy around the '488 Patent.

*3Com Corp. v. Diamond II Holdings* also illustrates this principle. In that case, the court found that Huawei's future 16.5% interest in Newco, a shell entity created to acquire 3Com, demonstrated they had a common legal interest "in obtaining [regulatory] approval and seeing the merger to its completion" but that their common legal interest did not extend to their

the common interest privilege and joint-client relationship that existed in 2012. *See, e.g.*, *3Com*, 2010 WL 2280734, at *8 (the common interest must be evaluated based on the parties' "position vis-à-vis one another at the time each challenged communication was made"); *Resolution Trust Corp. v. Fidelity & Deposit Co.*, 1995 U.S. Dist. LEXIS 21903, at *5 (D.N.J. Apr. 27, 1995) ("[E]ven if [a later event] was deemed to create sufficient adversity, the spirit of the . . . privilege does not lead this Court to believe that a waiver of the [common interest] privilege through adversity deems the previously protected information to be universally discoverable.").

negotiating a side letter between them because in that instance their interests were adverse. *3Com*, 2010 WL 2280734, at *1, *7-8.

In keeping with *3Com*, Cox and TWC have not asserted a common interest in any communications in which they were adverse to one another, nor has Sprint identified any such communications.  (*See* Delgado Decl. ¶¶ 8-12, 14; Block Decl. ¶¶ 11-14, 16-17.)

### c.   Cox And TWC Were Represented By Separate Counsel

Finally, Sprint argues that TWC and Cox's communications are not protected by the common interest privilege because they were not represented by separate counsel.  (Br. at 13–15.)  There is, however, no additional "separate counsel" requirement and, even if there were, TWC and Cox fulfilled it.

Sprint claims that *TeleGlobe* is "controlling law" and creates a separate counsel requirement is incorrect.  (Br. at 13.)  As both *TeleGlobe* and later cases have recognized, *TeleGlobe*'s "broad language" on this issue was dicta.  *TD Bank v. Hill*, 2014 WL 12617548, at *3 (D.N.J. Aug. 20, 2014).  Courts have in fact rejected the need for "separate counsel."  *See id.* In *TD Bank v. Hill*, the court held that communications between an author and publisher were protected because they shared a common interest in publishing a book without fear of copyright infringement, despite the fact that only the author had legal counsel.  *Id.* at *4.  As the court explained, "[t]he rule permits persons who have common interest to coordinate their positions without destroying the privilege[,]" whether the parties have separate representation or not.  *Id.* Here too, Cox and TWC shared an interest in obtaining and enforcing patents, and so could coordinate their positions without destroying the privilege.  Nothing more is required.

Second, even if there were a stringent "separate counsel" requirement (which there is not), TWC and Cox have fulfilled it.  Either Andy Block and Marcus Delgado were acting as "separate counsel" for their separate entities (TWC and Cox), or they were acting as

11

representatives of the single joint venture (TC Tech).  But either way, their communications are privileged.  To the extent that Sprint is implicitly arguing that *Teleglobe* requires separate *outside* counsel for each client, that is not what *Teleglobe* says, even in its expansive dicta.  *See Teleglobe*, 493 F.3d. at 365.[9]  Accordingly, courts frequently recognize that so long as each company has its own in-house counsel, the "separate counsel" requirement is met.[10]  In *Inventio AG v. ThyssenKrupp Elevator Americas Corp.,* 2010 WL 9546391 (D. Del. Aug. 15, 2013), for example, the court held that "sister corporations . . . Schindler and Inventio, which each have their own [in-house] counsel, share a common legal interest in the communications regarding the patents-at-issue."  *Id.* at *2.  Thus, "to the extent that the documents in the privilege log reflect communications between their lawyers, the document may be a privileged communication," so long as it met the other requirements for privilege.[11]  *Id.*  The same reasoning applies here.

### 2. Legal Communications Between Mr. Block And Mr. Delgado After The Formation Of TC Tech Are Privileged Communications Of TC Tech And/Or Protected By Common Interest Privilege

The emails between Mr. Block and Mr. Delgado after forming TC Tech are privileged

---

[9] Nor would such a requirement make sense.  Courts recognize that in-house counsel often act as both the attorney and client for their companies, depending on the situation.  *See Info-Hold, Inc. v. Trusonic, Inc.*, 2008 WL 2949399, at *3-4, n.5 (S.D. Ohio Aug. 30, 2008).  It would thus elevate form over substance to require that two members of a joint venture each retain separate outside counsel to relay their respective in-house counsel's legal advice.

[10] *E.g.*, *Rembrandt*, 2009 WL 402332, at *6 n.62, *8 ("separate counsel" prong met where one member of common interest group was represented by in-house "corporate counsel").

[11] While the *Inventio* Court ultimately found, after *in camera* review, that certain documents were not privileged, this finding does not vitiate its holding that the companies shared a common legal interest.  Sprint's reliance on isolated entries in the appendix (finding certain documents not privileged) is thus misplaced.  (Br. at 14.)  Further, even as to these documents, the court recognized that the sister companies could speak among themselves without fear of waiver as the court found that nearly all of their emails were protected by "work product immunity."  *Inventio*, 2010 WL 9546391, at *3.  Thus, Sprint's claim that the court "compelled production of several communications" is factually inaccurate; the companies were allowed to withhold them, just on different grounds.

because they are attorney-client communications seeking and receiving legal advice on the '488 Patent and potential litigation, and because after formation, Mr. Block and Mr. Delgado were both representatives of TC Tech. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ (Delgado Decl. Ex. A, at Art. 6.)  For that reason, both Mr. Block and Mr. Delgado were acting on behalf of TC Tech in seeking and obtaining legal advice related to the '488 Patent and this litigation.  (Delgado Decl. ¶¶ 16-21; Block Decl. ¶¶ 19-24.) Thus, the fact that Mr. Block and Mr. Delgado were copied on the same emails does not constitute disclosure to any third party and cannot work a waiver.

Courts have recognized that representatives of member companies of an organization need not rely on the common interest doctrine to shield their communications because the organization should be considered a single entity for privilege purposes.  In *In re Processed Egg Prod. Antitrust Litig.*, for instance, the court was asked to decide whether a trade group and one of its member companies were a "single corporate entity" for privilege purposes.  278 F.R.D. 112 (E.D. Pa. 2011).  The issue turned on whether the member "was acting as an agent of [the trade group] UEP, in its role as a member of the organization" or whether the member "was acting in its own interest, as an independent corporation" when the communication was made. *Id*. at 125.  While the court found the cease and desist letter at issue was not privileged, the court explained its ruling would be different if the party had been "acting in his capacity as a member of a UEP committee, [and] sought advice about a legal issue confronting the organization as a whole."  *Id*.  In that instance, the member should be "treat[ed] . . . as [a] person within the UEP corporation" itself.  *Id*.; *see also, e.g.*, *In re Fresh & Process Potatoes Antitrust Litig*., 2014 WL 2435581, at *2 (D. Idaho May 30, 2014) ("When one of the constituents of an organizational

client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected.").

These principles apply even more strongly in the joint venture context. *See Al-Yusr Townsend & Bottum Co. v. United Mid E. Co.*, 1995 WL 592548, at *4 (E.D. Pa. Oct. 4, 1995) ("[A]nalogous authority in the context of associations provides support of the conclusion that an attorney-client relationship does exist between the attorney representing a joint venture and the individual members of that joint venture."). Cox and TWC were the sole members of TC Tech. And with respect to the emails at issue, Mr. Block and Mr. Delgado were acting in their capacities as members of TC Tech who, ███████████████████████, were tasked with the responsibility to manage the affairs of TC Tech. (Delgado Decl. ¶¶ 16-21; Block Decl. ¶¶ 19-24.) There is not a single instance in which TWC's or Cox's interests were adverse in any way to those of TC Tech. Not even Sprint claims otherwise. Thus, after the formation of TC Tech, Mr. Block and Mr. Delgado's emails seeking and receiving legal advice on behalf of TC Tech are protected because they were not disclosed outside of that single legal entity.

Moreover, as discussed in Section IV(A)(1) above, even if these post-formation communications are deemed to have been disclosed outside of TC Tech, those communications would still be protected by the common interest privilege as TC Tech, Cox and TWC shared a common legal interest in their joint venture to obtain legal advice on the '488 Patent and this litigation for the reasons discussed above.

### 3. Legal Communications Involving Outside Counsel Are Also Protected By Joint Client Privilege

Separate and apart from the common interest doctrine, many of the challenged documents are also protected by the joint-client privilege. The joint-client privilege applies when "two or more people consult a single attorney . . . . on the same matter." *Teleglobe*, 493 F.3d at 362.

14

"The principal purpose of the joint client privilege is . . . to encourage the fullest possible communication between joint clients—and between them and their joint lawyer—with respect to matters related to the joint representation." *Sky Valley*, 150 F.R.D. at 653.

As reflected in the privilege log and the redacted documents, Cox, TWC and TC Tech jointly began soliciting pitches from outside counsel in Spring 2013. (Delgado Decl. ¶ 26; Block Decl. ¶ 30.) ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████[12] (Delgado Decl. ¶¶ 28-29; Block Decl. ¶ 32.) When TC Tech, Cox and TWC ultimately retained Latham in January 2016, ████████████████████████████████████████████████
████████████████████████████████. (Delgado Decl. ¶ 30; Block Decl. ¶ 33.) After retaining Latham, TC Tech (through Mr. Delgado and Mr. Block) exchanged numerous emails with Latham and Richards Layton containing legal analysis, drafts of legal filings and the complaint, including emails sent just days before the lawsuit was filed. Sprint's argument that ***none*** of these communications are privileged because Cox, TWC and TC Tech do not have a similar enough legal interest defies credulity.[13] The evidence of this joint-client relationship—evidenced by ██
████████████████████████████████████████████████████████████████

---

[12] Sprint's argument that no joint-client relationship existed prior to Latham's pitch in 2015 is meritless. The "attorney-client privilege protects conversations between prospective clients and counsel as well as communications with retained counsel." *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 n.1 (3d Cir. 1986). Thus, the fact that TC Tech, Cox and TWC did not ultimately hire the other law firms does not negate privilege. *See United States v. Montevecchio*, 645 F. Supp. 497, 499 (W.D. Pa. 1986) ("[A]ny communication from a prospective client to an attorney . . . [about] prospective representation . . . is privileged.").

[13] While Sprint's appendices indicate that it is no longer challenging emails after October 2015, there is no reason why emails after this date would be privileged while prior emails would not. Under the rule urged by Sprint—that Mr. Block and Mr. Delgado are third parties such that neither attorney-client privilege nor work product protection applies—every single email would have to be produced, up to and even after the lawsuit was filed. Sprint's arbitrary choice to limit its motion to emails prior to October 2015 is an implicit admission that its proposed rule leads to an absurd result.

15

██████████, and Messrs. Block and Delgado's declarations—is overwhelming.[14]

### 4. Many Of The Challenged Documents Are Separately Protected As Attorney Work Product

Separate and apart from the attorney-client privilege, many of the documents Sprint challenges are also protected as work product. A document is protected by the work product doctrine if it is prepared by or for an attorney in anticipation of litigation. *Novartis v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001). ████████████████

████████████████████████████████████████████████████

████████. (Delgado Decl. ¶¶ 37-39; Block Decl. ¶¶ 47-50.) And unlike the attorney-client privilege, work product is not waived through disclosure to a third party. *See Magnetar*, 886 F. Supp. 2d at 478 ("[D]isclosure to a third-party does not . . . waive the protection of work product . . . . [unless it] enable[s] an adversary to gain access to the information."). Thus, the work product emails remain protected regardless of whether the Court accepts the common interest, single-corporate-entity, or joint-client doctrines discussed above.

Sprint has never contested the adequacy of TC Tech's work product claims, nor has it ever met and conferred with TC Tech on this issue. Instead, Sprint asserts, for the first time in a single, cryptic footnote, that it *is* challenging Charter and Cox's work product claims because "Cox and Charter have failed to substantiate these designations." (Br. at 18 n. 14.) But simply saying it does not make it so. Sprint has not explained what additional information it believes it needs to be able to assess the work product claims, or why it disbelieves the privilege log

---

[14] Sprint's attempt to fault TC Tech for "not explain[ing] the timing or scope of its alleged [joint] representation" is unfounded. (Br. at 15.) If Sprint believed it needed more information not contained in the privilege logs or supplemental interrogatory response, Sprint should have met and conferred with TC Tech, as counsel offered to do. (Solomon Decl. ¶¶ 11-12, 19.) Having refused, Sprint cannot now complain that it lacks information to assess the joint-client privilege.

descriptions—either in its meet and confer letters or the brief itself.[15]  Any objection Sprint has

to Charter and Cox's independent work product claims is therefore both meritless and waived.

### B.  The Court Should Reject Sprint's Request For *In Camera* Review

The Court should also reject Sprint's request that the Court conduct *in camera* review to

double-check counsel's privilege calls.  "*[I]n camera* review is not appropriate merely because a

party objects to the assertions of privilege."  *Cent. Baptist Church v. Church Mut. Ins. Co.*, 2017

U.S. Dist. LEXIS 199782, at *8 (M.D. Ga. Dec. 5, 2017); *Local 3, Int'l Bhd. of Elec. Workers,*

*AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988) ("*In camera* review is considered the

exception, not the rule.").  Instead, a party must "advanc[e] a 'factual basis sufficient to support a

reasonable, good faith belief that *in camera* inspection may reveal evidence that the information

in the materials is not privileged.'"  *In re NC Swine Farm Nuisance Litig.*, 2017 WL 2313470, at

*1 (E.D.N.C. May 26, 2017).  This threshold showing is critical not only because *in camera*

review is itself an intrusion into the privilege, (*see In re Gen. Motors LLC*, 2015 WL 7574460, at

*4 (S.D.N.Y. Nov. 25, 2015)), but because a "courthouse could hardly function" if a court

"would review each and every document withheld as privileged . . ., for no reason other than

counsel's distrust of his adversary."  *First Nat. Bank of Louisville v. Lustig*, 1989 WL 126511, at

*2 (E.D. La. Oct. 18, 1989).  That is precisely the situation here.

Sprint seeks *in camera* review for the simple reason that it does not believe that the

emails are as the privilege log describes.[16]  This does not suffice.  To the contrary, courts have

---

[15] Sprint cannot be heard to complain that ███████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████  (Solomon Decl. ¶ 20.)

[16] Of course, to the extent that Sprint is really claiming that Cox and Charter's privilege log descriptions are inadequate for Sprint to be able to determine whether a particular document relates to legal, rather than business, advice, Sprint has waived this argument by refusing to meet

17

explained that "speculation" that there may be business emails hiding among legal documents is insufficient where a plaintiff provides a factual showing through a "detailed privilege log" and "accompanying explanatory affidavit of its general counsel" demonstrating otherwise. *See Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997); *see also, e.g.*, *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995) (denying motion without *in camera* review based on log and affidavit that communications reflected legal, rather than business, advice); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1449 (D. Del. 1989) (denying *in camera* review because documents would "clearly" be privileged "[i]f they are as plaintiff describes"). Here too, TWC and Cox's privilege log and declarations more than suffice to substantiate the privilege, and Sprint cannot rebut that evidence based on its speculation and distrust of counsel's privilege calls.[17]

Rather than meet its burden to show that Charter and Cox's privilege descriptions are inaccurate in any way, Sprint asks the Court to create a new exception to the rule against *in camera* review because Sprint claims (1) "TC Tech's privilege claims continue to conveniently evolve" and (2) TC Tech has engaged in "abuse in the form of *post hoc* rationalization for a client's impermissible disclosures." (Br. at 17.) Neither accusation is true.



and confer with Cox and Charter as ordered by the Court. (*See* Solomon Decl. Ex. F.)

[17]



(Delgado Decl. ¶ 11; Block Decl. ¶ 13.)

(Delgado Decl. Exs. C, D.)

(Delgado Decl. ¶ 30; Block Decl. ¶ 33.)   There is no "*post hoc*" rationalization; the contemporaneous record shows that Mr. Block and Mr. Delgado understood and treated TC Tech, Cox and TWC as having a common interest and joint-client relationship.

Nor has TC Tech's position "evolved."  Sprint here states that "TC Tech did not identify the joint-client doctrine . . . [until] its opposition to Sprint's letter brief [in January 2018]."  (Br. at 17.)  That is incorrect.  As early as May 2017—seven months before Cox and Charter served their joint privilege log—joint counsel for TC Tech, Cox and Charter met and conferred with Sprint on behalf of all three entities, and sent communications reflecting not only TC Tech's positions, but also those of "TC Technology's parent entities, Charter . . . and Cox," without complaint from Sprint.  (Solomon Decl. ¶ 4.)  Counsel again provided notice of the joint representation to Sprint in an email in October 2017, informing them that Latham was jointly representing TC Tech, Cox and Charter in connection with another subpoena in the litigation. (*Id.* ¶ 5.)

(*Id.* ¶ 6.)  And finally, during the meet and confer process over the bases for Charter and Cox's privilege calls in early January 2018, Charter and Cox stated that they were asserting "attorney-client privilege" over emails with outside law firms because "[t]hese firms provided . . . analysis regarding the '488 patent at a time when Time Warner Cable, Cox and/or TC Technology were

19

clients or potential clients of those firms." (Solomon Decl. Ex. D.) TC Tech has thus been clear that it is asserting the joint-client privilege from the start—both before and after Charter and Cox served their privilege log in December 2017—and its position on these issues has not changed.[18]

Lastly, and most importantly, it is not clear what documents Sprint wants the Court to review or why. Sprint asks Charter and Cox to produce for *in camera* review any emails about "(1) the reasons for acquiring the '488 patent; (2) the reasons for forming a joint venture to monetize that patent; (3) the reasons for acquiring the '488 patent rather than some other patent; and (4) the price of the '488 patent." (Br. at 8 n.4.) Sprint has not specifically identified any communications that relate to the price determination for the '488 Patent or the reasons for forming a joint venture. ███████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

(Delgado Decl. ¶¶ 43-49; Block Decl. ¶¶ 37-49.) Cox and TWC undertook a careful, document-by-document review of the communications to ensure that the withheld emails relate to legal, rather than business, advice, and produced any and all emails that did not. (Solomon Decl. at ¶ 15.) Sprint's requested *in camera* review is not narrowly tailored to any issue and seeks to impose an undue burden on the Court and expose Cox and TWC's privileged communications to the Court, and should be denied.

Sprint's reasoning for asking the Court to review all of Mr. Block and Mr. Delgado's communications with one another is even less clear. (Br. at 8 n.5.) On these issues, it is not

---

[18] ████████████████████████████████ ████████████████████████████ ████████████████████████ (Solomon Decl. ¶ 20.)

evident what Sprint is hoping *in camera* review will accomplish, given that Sprint itself has characterized this motion as turning on "issues of law" for the Court to decide.  (D.I. 160.) Under Sprint's theory, if the Court finds that Mr. Block and Mr. Delgado were third parties to one another, then their emails are not privileged, plain and simple.  There is no need for further review.  Sprint's motion is therefore a blanket request that the Court double check virtually all of counsel's privilege calls.  That is exactly what courts find insufficient for *in camera* review.

## V.    CONCLUSION

For all the reasons above, Cox and Charter respectfully request the Court deny Sprint's motion to compel the production or *in camera* review of their privileged documents.

21

Of Counsel:

Lawrence J. Gotts
Saswat Misra
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200
Lawrence.Gotts@lw.com
Saswat.Misra@lw.com

Stephanie N. Solomon
Kevin L. Mallen
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
(212) 906-1200
Stephanie.Solomon@lw.com
Kevin.Mallen@lw.com

Anant K. Saraswat
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000
Anant.Saraswat@lw.com

David S. Benyacar
Daniel L. Reisner
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
david.benyacar@arnoldporter.com
daniel.reisner@arnoldporter.com


Dated: March 28, 2018

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Katharine L. Mowery (#5629)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
Farnan@rlf.com
Mowery@rlf.com


*Attorneys for Plaintiff TC Technology LLC*

22