IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TC TECHNOLOGY LLC,

    Plaintiff,

v.

SPRINT CORPORATION and SPRINT
SPECTRUM, L.P.,

    Defendants.

No. 16-cv-153-RGA

MEMORANDUM ORDER

Presently before the Court is the motion to compel production of non-privileged documents filed by Defendants Sprint Corporation and Sprint Spectrum, L.P. (collectively "Sprint"). (D.I. 161). I have considered the parties' briefing. (D.I. 162, 172, 183).

I. BACKGROUND

Plaintiff TC Technology LLC ("TC Tech") is jointly owned by cable companies Time Warner Cable LLC ("TWC") and Cox Communications, Inc. ("Cox") and has no separate employees. (D.I. 172 at 2). TC Tech filed this action against Sprint alleging infringement of U.S. Patent No. 5,815,488 ("the '488 patent") on March 10, 2016. (D.I. 1). The relevant timeline, however, starts well before TC Tech filed suit.

In December of 2011, Sprint sued TWC and Cox, among others, for infringement of Voice over Internet Protocol ("VoIP") patents. (D.I. 162 at 2). In early 2012, TWC and Cox began to consider joint acquisition of the '488 patent from CableLabs, a consortium of U.S. cable companies. (D.I. 172 ¶ 10; D.I. 175 ¶ 7). On March 26, 2012, TWC and Cox formed TC Tech

to acquire and monetize the '488 patent. (D.I. 175, ex. A). On March 30, 2012, TC Tech purchased the '488 patent from CableLabs. (*Id.*, ex. B). In the spring of 2013, TC Tech, TWC, and Cox began to hear pitches from outside counsel for potential litigation asserting the '488 patent. (D.I. 173 ¶ 30; D.I. 175 ¶ 26). TWC and Cox met with Latham & Watkins LLP in October of 2015, and all three entities formally retained the firm in January of 2016. (D.I. 173 ¶ 33; D.I. 175 ¶ 30). In March of 2017, after this suit was filed, Sprint won a $140 million verdict against TWC. (D.I. 162 at 3).[1] Sprint settled its suit against Cox later that year. (*Id.*).

Sprint brought this motion to compel the production of various pre-2013 communications between TC Tech, TWC, and Cox.[2] The disputed documents can be sorted into two, overlapping categories—(1) communications including third parties (D.I. 183 at 4 n.1, ex. A), and (2) communications alleged to be likely to contain relevant business information (D.I. 162, app. 2). In regard to the first category, the parties dispute whether TC Tech can claim attorney-client privilege via the common-interest exception to third-party disclosures.[3] (D.I. 183, ex. A; D.I. 162 at 8–15; D.I. 183 at 4–10). In regard to the second category, Sprint argues that, even if the communications are privileged in part, TC Tech should be required to produce the portions that contain non-privileged business information. (D.I. 162 at 7–8; D.I. 183 at 1–4).

---

[1] The Federal Circuit affirmed the decision on November 30, 2018. *Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 2018 WL 6266319 (Fed. Cir. Nov. 30, 2018).

[2] Sprint withdrew "its challenge to communications with outside counsel in 2013 over which Cox and []TWC claim joint-client exception and work product protection." (D.I. 183 at 4 n.1). The remaining disputed documents are listed in Appendix 2 of Sprint's opening brief and Exhibit A of Sprint's reply brief. I believe all the remaining documents pre-date 2013. (D.I. 162, app. 2; D.I. 183, ex. A).

[3] As stated in note 1, Sprint withdrew its objections to the initially disputed 2013 communications with outside counsel. I believe this eliminated any disputes over the applicability of the joint-client exception, at least pertaining to this motion. (*Compare* D.I. 162, app.1, *with* D.I. 183, ex. A).

2

## II. LEGAL STANDARD

### A. Common Interest Privilege

"The attorney-client privilege" is a common-law privilege that "protects communications between attorneys and clients from compelled disclosure." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). In order for the privilege to apply, there must be "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *Id.* (quoting Restatement (Third) of the Law Governing Lawyers § 68 (Am. Law. Inst. 2000)). The party asserting the privilege bears the burden of establishing the requisite elements. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012). A communication is only privileged if made in confidence. *Teleglobe*, 493 F.3d at 361. If "persons other than the client, its attorney, or their agents are present, the communication is not made in confidence." *Id.* Further, "if a client subsequently shares a privileged communication with a third party, then it is no longer confidential, and the privilege ceases to protect it." *Id.*

The common interest doctrine is an exception to the general rule that voluntary disclosure to a third party of purportedly privileged information waives the privilege. *Acceleration Bay LLC v. Activision Blizzard*, 2018 WL 798731, at *4 (D. Del. Feb. 9, 2018); *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010). The privilege protects "all communications shared within a proper 'community of interest.'" *Teleglobe*, 493 F.3d at 364 (citations omitted). The interests "must be 'identical, not similar, and be legal, not solely commercial.'" *Leader Techs.*, 719 F. Supp. 2d at 376 (quoting *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996)).[4] Additionally, to show that the members of the

---

[4] Applying Delaware law, the Third Circuit in *Teleglobe* held instead that "members of the community of interest must share at least a substantially similar legal interest." 493 F.3d at 365. Although there has

3

community are "allied in a common legal cause," the party asserting the privilege bears the burden of showing "that the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation." *In re Regents of the Univ. of Cal*, 101 F.3d at 1389 (quoting *In re Grand Jury Subpoena Duces Tecum*, 406 F. Supp. 381, 386 (S.D.N.Y. 1975)); see also *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986).

The parties dispute whether the common interest doctrine also requires communications be made through separate counsel. In *Teleglobe*, the Third Circuit provided that "to be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest," meaning that "separate attorneys share information (and not the clients themselves)." 493 F.3d at 364–65. TC Tech argues that this language is dicta. (D.I. 172 at 11); *see TD Bank, N.A. v. Hill*, 2014 WL 12617548, at *3 (D.N.J. Aug. 20, 2014). Although the Third Circuit does state that its common interest opinion "may seem surplusage," it is not clear that the opinion is dicta. *Teleglobe*, 493 F.3d at 365 n.18 (noting that the district court erroneously found a community of interest, and that existing caselaw was confused, making it important to distinguish between the common interest privilege and the joint-client privilege). But, regardless, *Teleglobe* applied state law and is thus not controlling authority. *See id.* at 363–65.

This Court has previously found that requiring separate counsel is "too narrow" of an application of the common interest doctrine. *See Intellectual Ventures I LLC v. Altera Corp.*,

---

been disagreement within the Third Circuit on "how common the supposed interests have to be," *Leader Technologies*, 719 F. Supp. 3d at 376, in recent years, this Court has repeatedly stated that the interest must be "identical." *See Acceleration Bay*, 2018 WL 798731, at *2; *Del. Display Grp. LLC v. Lenovo Grp. Ltd.*, 2016 WL 720977, at *4 (D. Del. Feb. 23, 2016); *INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*, 2013 WL 12171721, at *7 (D. Del. June 25, 2013).

4

2013 WL 12311005, at *5–6 (D. Del. July 25, 2013). "The Third Circuit has stated, '[t]he presence of a third party will not vitiate the attorney-client privilege, if the third party is the attorney's or client's agent or possesses a commonality of interest with the client.'" *Id.* (quoting *In re Grand Jury Investigation*, 918 F.2d 374, 386 (3d Cir. 1990)). In *Intellectual Ventures*, the third party to whom the privileged communications was disclosed was a non-attorney consultant. *Id.* at *5. The defendants argued that the common interest doctrine did not apply because, among other things, "there is no evidence that [the third party] was represented by an attorney." *Id.* This Court rejected that argument and found a "sufficient common interest" between the plaintiffs and the third party. *Id.* at *6.

In light of *Intellectual Ventures* and *In re Grand Jury Investigation*, I find that the common interest doctrine does not strictly require that communications be between separate attorneys. It is sufficient to show that the client and third parties shared an interest that is "identical, not similar," and "legal, not solely commercial."

### B. Business Advice

The attorney-client privilege requires that a communication be made "for the purpose of obtaining or providing legal assistance for the client." *Teleglobe*, 493 F.3d at 359. "Where a lawyer provides non-legal business advice, the communication is not privileged." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). Courts have recognized that "business and legal advice may often be inextricably interwoven." *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977). For this reason, courts look to the documents' primary purpose to determine whether attorney client privilege applies. *Id.* at 147; *Immersion Corp. v. HTC Corp.*, 2014 WL 3948021, at *1 (D. Del. Aug. 7, 2014).

5

## III. ANALYSIS

### A. Communications Including Third Parties[5]

TC Tech does not dispute that TWC and Cox are third parties for purposes of attorney-client privilege. The question is whether TC Tech, TWC, and Cox shared an identical legal interest such that the disputed communications fall under the common interest privilege.

TC Tech argues that all three entities shared a common legal interest "in seeking and receiving legal advice related to (1) obtaining a strong and enforceable patent, (2) forming a legal entity to obtain and enforce that patent, and (3) engaging outside counsel to litigate Sprint's infringement of that patent." (D.I. 172 at 7). TC Tech cites to *Rembrandt Technologies, L.P. v. Harris Corp.*, where the court found the parties shared a "common legal interest in the exploitation and enforcement of [the patent at issue]." 2009 WL 402332, at *8 (Del. Super. Ct. Feb. 12, 2009). Likewise, in *In re Regents of University of California*, the court held the patentee, University of California, and a nonexclusive licensee shared the identical legal interest of "seeking valid and enforceable patents." 101 F.3d at 1390. The University of California did so "to support royalty income," and the licensee did so "to support commercial activity." *Id.*

Sprint argues that any common interest between TC Tech, TWC, and Cox was commercial, rather than legal. (D.I. 162 at 10–11; D.I. 183 at 5). Sprint likens the shared interest to "'an agreement to share litigation expenses,' which 'could be viewed as more consistent with a financial oriented decision.'" (D.I. 162 at 10 (quoting *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2011 WL 2623306, at *5 (E.D. Pa. July 5, 2011)). In support, Sprint cites several cases that it says find similar interests are not legal interests. *See Baby Neal*

---

[5] This section refers to the first category of documents, described in Exhibit A of Sprint's reply brief. (D.I. 183, ex. A).

6

*v. Casey*, 1990 WL 163194, at *2 (E.D. Pa. Oct. 23, 1990); *Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817, at *8 (D.N.J. June 26, 2008); *McCullough v. Fraternal Order of Police, Chi. Lodge 7*, 304 F.R.D. 232, 240 (N.D. Ill. 2014).

Sprint's case law is distinguishable. In *King Drug*, the defendant conceded that communications with the non-privileged third party were purely on the "business side" of their joint efforts. 2011 WL 262330, at *4–5. The third party further represented that the litigation was "completely controlled" by the defendant and that the third party was "not actively involved." *Id.* Here, TC Tech is comprised only of its members, TWC and Cox. (D.I. 175, ex. A). The disputed communications were allegedly made to obtain legal advice related to the '488 patent. (D.I. 173 ¶¶ 11, 13, 23–26; D.I. 175 ¶¶ 8, 10–11, 19–23). Unlike the parties in *King Drug*, TWC and Cox both appear to have been heavily involved in the anticipated litigation.

*Net2Phone*, *Baby Neal*, and *McCullough* are even less helpful to Sprint. *Net2Phone* addressed "an indirect interest as a shareholder"—a purely financial interest. 2008 WL 8183817, at *8. *Baby Neal* addressed an interest "in the sense that relief sought by the plaintiffs would almost certainly work to [the relevant party's] benefit as well"—a less direct, purely financial interest. 1990 WL 163194, at *2. *McCullough* addressed "a common interest in seeing the [defendant] punished for what [the relevant parties] perceived to be the wrongs each of them allegedly suffered"—an intangible emotional interest. 304 F.R.D. at 240. Each of these is clearly distinguishable from the interests shared by TC Tech, TWC, and Cox to obtain and enforce the '488 patent.

I find *Rembrandt* and *In re Regents* more persuasive. I agree that the interest here in acquiring and enforcing a patent is a legal interest. Mr. Block (former in-house counsel for TWC) and Mr. Delgado (in-house counsel for Cox) represent that TWC and Cox began

7

considering joint acquisition of the '488 patent in early 2012 and formed a joint venture to explore that opportunity. (D.I. 173 ¶ 10; D.I. 175 ¶¶ 7–8). The parties together engaged in negotiations to purchase the '488 patent from CableLabs and ultimately formed TC Tech to purchase and enforce the patent. (D.I. 173 ¶¶ 12, 18; D.I. 175 ¶¶ 9–10, 15). I think these representations are sufficient to show TWC, Cox, and later TC Tech, had a shared legal interest in acquiring and enforcing the '488 patent.

In the alternative, Sprint argues that TC Tech, TWC, and Cox could not have had identical legal interests because TC Tech is inherently adverse to TWC and Cox. Sprint argues that TC Tech's sole purpose is to monetize the '488 patent, while TWC and Cox were only interested in the patent as a means to gain leverage over Sprint in their respective litigations. (D.I. 162 at 9). In those litigations, TWC and Cox each had an incentive to settle, and Cox did in fact settle in late 2017. (*Id.* at 3, 9). Under Sprint's theory, the relationship was "potentially conflicted" from the beginning as TWC or Cox would inevitably be forced to choose between selling its interest in TC Tech and the '488 patent, or continuing to fund a lawsuit for which it could not receive any financial return. (D.I. 162 at 10). Sprint argues that the parties' "potentially conflicted relationship" waives any community interest privilege they might have had, or at least requires the Court to conduct *in camera* review of the disputed communications. *See 3Com Corp. v. Diamond II Holdings, Inc.*, 2010 WL 2280734, at *8 (Del. Ch. May 31, 2010).

Sprint assumes that TWC and Cox were only interested in the '488 patent as it related to their litigations with Sprint. There is no reason to believe that TWC and Cox, as the only members of TC Tech, were not also interested in monetizing the '488 patent. (D.I. 175, ex. A). Further, even if Sprint is correct, a conflict of interest would have only arisen after TWC or Cox

8

settled. Otherwise, TC Tech, TWC, and Cox all shared the same legal interest in acquiring and enforcing the '488 patent. Sprint's argument that privilege was waived by the parties' "potentially conflicted relationship" is based on a mischaracterization of *3Com*. The court in *3Com* found the relevant parties had both common and adverse interests. 2010 WL 2280734, at *8. Thus, the court described their relationship as "potentially conflicted" and opted for *in camera* review. *Id.* Here, Sprint argues that, despite the parties having no adverse interests at the time the communications were made, the mere potential for adverse interests in the future is sufficient to warrant *in camera* review. I disagree. The fact that Cox did settle in 2017 should not retroactively taint the communications made in 2012.

Finally, Sprint argues that, at a minimum, TC Tech cannot claim the community interest privilege over communications prior to its formation on March 26, 2012.[6] Sprint alleges, "[P]rior to entering any formal agreement acquiring rights in the '488 patent, these companies merely shared a business interest in evaluating the profitability of a shared business venture." (D.I. 162 at 11). Sprint points to this Court's previous finding that parties did not share a common legal interest because they had not yet reached a written agreement, nor filed any litigation. *Acceleration Bay*, 2018 WL 798731, at *3. I think Sprint reads *Acceleration Bay* too broadly. I did not set a firm rule that parties must have a written agreement or have filed suit to share a legal interest. Rather, I merely considered the lack of an agreement or suit as evidence of the lack of a shared interest. Here, only a handful of the disputed communications occurred before March 26, 2012, and they are dated between March 14 and March 23, 2012. (D.I. 162, app. 3). Mr. Block and Mr. Delgado represented that TWC and Cox began discussing

---

[6] This argument refers to the documents described in Appendix 3 of Sprint's opening brief. (D.I. 162, app. 3).

9

acquisition of the '488 patent in early 2012, including forming a joint venture and negotiating the purchase with CableLabs. (D.I. 173 ¶¶ 10, 12; D.I. 175 ¶¶ 7–10). Prior to that, TWC and Cox had already entered a common interest and joint defense agreement to obtain legal advice regarding the Sprint VoIP litigation. (D.I. 173 ¶¶ 7–8; D.I. 175 ¶ 6). TC Tech then purchased the '488 patent a mere four days after it was formed. It seems likely that TWC and Cox sought legal advice regarding the '488 patent prior to forming TC Tech, at least as early as March 14, 2012. Thus, I believe TWC and Cox shared substantively identical legal interests shortly before and after forming TC Tech. I see no reason why the formation date should be a hard cut-off for privilege.

Therefore, I find TC Tech has met its burden of establishing the common interest privilege with respect to the disputed communications between TC Tech, TWC, and Cox. (D.I. 183, ex. A).

### B. Communications Likely to Contain Business Information[7]

Sprint does not dispute that the second category of documents may include privileged information. Rather, Sprint argues that the documents also include non-privileged information that requires TC Tech to produce the documents with the appropriate redactions. (D.I. 162 at 7–8; D.I. 183 at 1–4). Specifically, Sprint alleges that the documents are likely to contain business information related to "(1) the reasons for acquiring the '488 patent; (2) the reasons for forming a joint venture to monetize that patent; (3) the reasons for acquiring the '488 patent rather than some other patent; and (4) the price of the '488 patent." (D.I. 162 at 8 n.4).

---

[7] This section refers to the second category of documents, described in Appendix 2 of Sprint's opening brief. (D.I. 162, app. 2).

10

I am not convinced that Sprint's four categories necessarily read on business, rather than legal, advice.[8] However, for issues related to non-legal communications, courts generally look to a document's "primary purpose" to determine whether attorney-client privilege applies. *See Hercules*, 434 F. Supp. at 147. I appreciate that doing so requires reviewing the actual documents. Therefore, moving forward, Sprint should identify a subset of no more than 15 of the 173 disputed documents (D.I. 162, app. 2) that it believes are most likely to contain business information. TC Tech should then provide the identified documents for *in camera* review. If, after reviewing those documents, the Court finds that Sprint's arguments have merit, the Court will review the remainder of the documents.

Sprint should make its identifications within one week of this order, and TC Tech should provide the documents *in camera* within one week of the identifications.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to compel production of non-privileged documents (D.I. 161) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

IT IS SO ORDERED this 13 day of December 2018.

Richard G. Andrews
United States District Judge

---

[8] I do not now express an opinion that Sprint's first three categories have any independent relevance to this litigation.

11