## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TC TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 16-153-RGA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| SPRINT CORPORATION AND SPRINT | ) | REDACTED |
| SPECTRUM, L.P., | ) | PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff TC Technology LLC ("TC Technology"), by and through its undersigned attorneys, hereby files this Complaint against Defendants Sprint Corporation and Sprint Spectrum, L.P. (collectively "Sprint" or "Defendants").  TC Technology states as follows:

## THE PARTIES

1.      TC Technology is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 60 Columbus Circle, New York, NY 10023.

2.      Defendant Sprint Corporation is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6200 Sprint Parkway, Overland Park, Kansas 66251.  Sprint Corporation may be served with process via its registered agent, the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

3.      Defendant Sprint Spectrum, L.P. is a limited partnership organized and existing under the laws of the State of Delaware, with a principal place of business at 6200 Sprint Parkway, Overland Park, Kansas 66251.  Sprint Spectrum, L.P. may be served with process via its registered

agent, the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

### TC TECHNOLOGY LLC AND THE BACKGROUND OF THE '488 PATENT

4.     The patent at issue in this action, U.S. Patent No. 5,815,488 (the "'488 Patent"), was filed for in 1995 by inventors Thomas H. Williams and Richard S. Prodan.  The inventors assigned the '488 Patent to Cable Television Laboratories, Inc. ("CableLabs") in 1995.

5.     CableLabs is a non-profit research and development consortium funded by cable industries that is dedicated to creating innovative ideas related to the business of cable operators. CableLabs has over 50 member companies, including many major cable operators.  CableLabs works to "define interoperable solutions among [its] members and their technology vendors in order to drive scale, reduce costs, and create competition in the supply chain."[1]

6.     TC Technology was formed and established in 2012 by two CableLabs member companies, Time Warner Cable LLC ("Time Warner Cable") and Cox Communications, Inc. ("Cox Communications").   Time Warner Cable and Cox Communications jointly own TC Technology.  CableLabs assigned all rights, title and interest to the '488 Patent to TC Technology in 2012.

### TIME WARNER CABLE

7.     Time Warner Cable, formed in 1992, is the second largest cable company in the United States with over 16 million customers and over $22 billion USD in revenue in 2014.  Time Warner Cable has a long history of innovation and leadership in the telecommunications industry. For example, Time Warner Cable was a pioneer in the use of fiber optics to deliver services to

---

[1] *See* http://www.cablelabs.com/about-cablelabs/.

2

customers and, in 1996, launched RoadRunner, the first cable-delivered high speed Internet service.

8.      Time Warner Cable has been granted hundreds of patents for its technology by the Patent and Trademark Office.  In 2015, Time Warner Cable was awarded its ninth Technology and Engineering Emmy Award, given by the National Academy of Television Arts and Sciences.  The award recognized Time Warner Cable's innovations related to the delivery of video to consumer devices over an Internet Protocol (IP) Connection.

## COX COMMUNICATIONS

9.      Cox Communications was founded in 1962 and is the third largest cable television provider in the United States with 6 million total residential and commercial customers.  Cox Communications recently led the industry by committing to deploy Gigabit Internet speeds to its residential customers.

10.     In the last 10 years, Cox Communications has invested more than $15 billion to deliver video, phone and high-speed Internet service to homes and businesses in the company's service area.  Since 2012, nearly 25,000 families have been connected to the Internet through Cox Communications' Connect2Compete low income broadband program.

11.     Cox Communications' patent portfolio includes hundreds of granted patents.  In 2014, Cox Communications was a recipient of the CIO magazine's CIO 100 award.  The award considers entries across industries around the world and recognizes 100 organizations that "exemplify the highest level of operational and strategic excellence in information technology (IT)."[2]

---

[2] *See* http://newsroom.cox.com/news-releases?item=758.

## SPRINT

12.     Sprint owns and operates an LTE network in the State of Delaware and elsewhere in the United States.

13.     Sprint provides services for use on Sprint's LTE network.  Sprint offers to sell and sells a wide range of voice (or "talk"), data, and text services for use with the Sprint LTE network. For example, Sprint offers to sell and sells a "Family Share Pack" service, a "My All-In plan" service, a "Unlimited, My Way" service, and a $60 "Unlimited Plan" service:[3] [4]



---

[3] *See*
http://www.iclarified.com/43279/sprint%ADlaunches%ADnew%AD60%ADunlimited%ADplan
1/11; http://www.mactrast.com/2012/05/1-2-million-ios-5-1-1-devices-already-jailbroken-using-absinthe-2-0/3/; and http://www.sprint.com/global/pdf/ebrochures/NM4002_1988_plans.pdf.
[4] Unless otherwise indicated, red emphasis, in the form of boxes or lines, has been added to all figures in which it appears in this Complaint.





14.     Further, Sprint offers additional types of data service plans for use with the Sprint

LTE network:[5]



---



15.    Sprint makes its voice, data, and text services available to customers, who use the

services at the direction or control of Sprint.



16.    In addition, Sprint employees and contractors test Sprint's voice, data, and text

services: [6] [7]

---

[6] *See* http://coverage.sprint.com/coverageDescBoost.html.
[7] *See* http://connection.sprint.com/tag/4g-lte/.

**Important Coverage and Performance Information**

Our coverage maps are high-level estimates when using your device outdoors under optimal conditions. Estimating wireless coverage and signal strength is not an exact science. There are gaps in coverage within our estimated coverage areas that, along with other factors both within and beyond our control (network problems, software, signal strength, your wireless device, structures, buildings, weather, geography, topography, etc.), will result in dropped and blocked connections, slower data speeds, or otherwise impact the quality of services. Sprint regularly measures the performance, coverage and speed of its 3G and 4G data networks in an effort to ensure our coverage maps and performance information are accurate and up-to-date. Our average speed and latency estimates are based on a combination of independent third-party testing and Sprint-generated results. Coverage isn't available everywhere, and speeds may vary considerably from these averages.

**Enhanced LTE:** Our fastest data network available. Expect variability in service as Sprint continues to deploy tri-band LTE capability on its new network. In Enhanced LTE coverage areas you can expect average download speeds of 6-15 Mbps. Enhanced LTE is suitable for data-intensive processes, audio and video* streaming and robust web browsing. Other general Internet usage consistent with Boost Mobile's terms and conditions also is supported.

**Sprint 4G LTE network:** Expect to experience download speeds of 6-8Mbps and upload speeds of 2-3Mbps with an average device to network edge round-trip latency of less than 60ms. The average speed and latency of our 4G LTE network is suitable for video* and audio streaming, web browsing and other general Internet usage consistent with Boost Mobile's terms and conditions.

Offers and coverage not available everywhere or for all phones/networks. **10x faster claim:** Speed comparison based on internal testing of Sprint 4G LTE vs. Sprint 3G speeds. Excludes streaming video speeds that may be limited to 1Mbps and plans that may receive lower bandwidth priority. Actual speeds may vary. **HD Voice Capability:** Req. call between two Sprint HD Voice-enabled phones on Sprint network upgraded areas. **Sprint Spark:** Sprint Spark (enhanced LTE) is available in limited markets, on devices with enabled tri-band LTE capability. Visit sprint.com/coverage for details. Sprint 4G LTE network reaches 225 million people. Sprint 3G network reaches over 281 million people. Nationwide Sprint network reaches over 279 million people. Restrictions apply. See store or sprint.com for details.

©2014 Sprint. All rights reserved. Sprint, the logo and Sprint Spark are trademarks of Sprint. LTE is a trademark of ETSI. Other marks are the property of their respective owners.

17.    Customers are required to sign a service agreement before they can access Sprint's LTE network. For example, Sprint provides a copy of a "Standard Terms and Conditions for Communications Services" agreement on its website:[8]

**Standard Terms**

The Standard Terms and Conditions for Communications Services are the general provisions that apply to all Sprint wireless and wireline, local and long distance business communications products and services, except as superseded by an individually-negotiated customer agreement.

18.    As described in the preceding paragraphs, Sprint provides services to its employees and third parties for use on Sprint's LTE network in the State of Delaware and elsewhere in the

---

[8] *See* http://www.sprint.com/business/support/ratesWelcome.html.

United States.  The use of these services on Sprint's LTE network results in infringement of the '488 Patent.

## JURISDICTION AND VENUE

19.    This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

20.    This Court has personal jurisdiction over Defendants by virtue of the business activities Defendants conduct within the State of Delaware, resulting in sufficient minimum contacts with this forum. Defendants conduct substantial business activities in the State, including acts of patent infringement that have injured Plaintiff, and therefore Defendants have purposefully availed themselves of the laws of the State of Delaware.

21.    Sprint directly and/or through intermediaries offers to sell and sells a wide range of voice, data, and text services for use on the Sprint LTE network in the State of Delaware.  Sprint directly and/or through intermediaries provides wireless devices, including smartphones, tablets, laptops, hotspots, USB modems and internal computer cards, to customers, employees, and contractors, who use Sprint's services on Sprint's LTE network at the direction or control of Sprint in the State of Delaware.  Sprint imports, makes, offers for sale, sells, leases, and/or uses network equipment to support operation of Sprint's services on the Sprint LTE network in the State of Delaware.  The use of Sprint's services on Sprint's LTE network has resulted in acts of infringement.

22.     Sprint conducts a significant amount of business in the State of Delaware based on its LTE network.  For example, coverage maps available on Sprint's website show that its services are available on its LTE network ("4G LTE" and "[E]nhanced LTE") throughout the State:[9]





---

[9] Maps generated using "Coverage Check" feature available at http://web.archive.org/web/20150311082654/http://coverage.sprint.com/IMPACT.jsp and https://coverage.sprint.com/IMPACT.jsp?.

23.     In addition, Sprint advertises LTE services in multiple cities in the State of Delaware:[10]



24.     Sprint also conducts a significant amount of business throughout the State of Delaware through its offers to sell, sales and leases of consumer devices for use with its services.

25.     Sprint operates stores in the State of Delaware that offer to sell, sell and lease the consumer wireless devices:[11]

---

[10] *See*
https://shop2.sprint.com/en/shop/why_sprint/4g/4g_lte_coverage_list.html?INTNAV=NET:
MS:051313:4GLTE.
[11] *See* http://storelocator.sprint.com/locator/.

10



26.    Sprint has also created "Sprint Stores," which are present within the stores of

partners such as Radio Shack, in the State of Delaware:[12]

---

[12] *See* https://www.radioshack.com/apps/store-locator.



27.    Defendant Sprint Corporation is a corporate parent to well over 100 subsidiaries based in the State of Delaware.[13]

28.    Further, as noted above, Defendants Sprint Corporation and Sprint Spectrum, L.P. are each organized and existing under the laws of the State of Delaware.

29.    Each of Sprint Corporation and Sprint Spectrum, L.P. may be served with process via their registered agent, the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

---

[13] *See* http://www.sec.gov/Archives/edgar/data/101830/000010183015000012/sprintcorp10-kexhibit212014.htm.

## JOINDER

30.      Joinder of Sprint Corporation and Sprint Spectrum, L.P. is proper under 35 U.S.C. § 299.  The allegations of patent infringement contained herein arise out of the same series of transactions or occurrences relating to the making, using, offering for sale, selling, or leasing within the United States, or importing into the United States, of the same accused services, including the Accused Services described below.

31.      Common questions of fact relating to Sprint's infringement will arise in this action. For example, common questions of fact regarding the design, development, and operation of services offered on Sprint's LTE network will arise in this action, as well as common questions of fact concerning Sprint's infringement of the '488 Patent.  Likewise, common questions of fact exist as to profits and revenues derived by Sprint Corporation and Sprint Spectrum, L.P., as well as TC Technology's damages for the same.  On information and belief, common questions of fact will also likely exist with regard to one or both of Sprint Corporation and Sprint Spectrum, L.P.'s defenses in this litigation, if any.

## ACCUSED SERVICES

32.      The "Accused Services" are each and every service (a) that is capable of use, or that is used, with Sprint's LTE network, (b) that is capable of being used in infringement, or that has been used in infringement, of the '488 Patent, and (c) that has been sold or offered for sale, whether individually or as part of a multiple-service plan, at any time prior to expiration of the '488 Patent.

33.      Accused Services include, but are not limited to, cellular data services, cellular voice services, and texting services compliant with the LTE Standard.

## SPRINT'S WILLFUL INFRINGEMENT

34.     Upon information and belief, Sprint has had actual knowledge of, should have known of, and/or has been willfully blind to, the '488 Patent since at least January 2012.

35.     Sprint's knowledge of the '488 Patent notwithstanding, Sprint launched the Accused Services in July 2012, thereby making, using, selling and/or offering for sale its services that infringe TC Tech's intellectual property, all despite an objectively high likelihood that Sprint's actions constituted infringement of a valid patent.  Upon information and belief, Sprint either knew or should have known of such infringement of TC Tech's intellectual property rights.

36.     By way of background, Sprint knew ███████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████

37.     Against this background, and more specifically, Sprint had actual knowledge of the '488 Patent prior to launch, and yet failed to request a license to the '488 Patent or take any steps to attempt to avoid infringement. ████████████████████████████████████

████████████████████████████████████████████████████████████████

14

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

38.   ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████

39.   ████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

15



40. ██████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████

41. ██████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████

42. ██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

16



43.

44.

45.

46.     Upon information and belief, despite such knowledge and/or willful blindness of the '488 Patent, Sprint acted in reckless disregard of known patent rights and an objectively high likelihood that its services infringed TC Tech's valid and enforceable '488 Patent.  As such, upon information and belief, Sprint's infringement of the '488 Patent has been willful.

## **REFERENCES**

47.     References to the "LTE Standard" refer to any of the LTE digital cellular standards as defined by the 3rd Generation Partnership Project ("3GPP") (including the frequency division duplex (FDD) and time division duplex (TDD) variants) and include any and all evolutions such as, without limitation, the LTE Advanced standard, and any subsequent versions thereof.

17

48.     References to "TS 36.211" refer to the LTE Standard document titled "3GPP TS 36.211 V10.4.0 (2011-12) Technical Specification."  References to "TS 36.300" refer to the LTE Standard document titled "3GPP TS 36.300 V11.1.0 (2012-03) Technical Specification."  References to "TS 36.521-1" refer to the LTE Standard document titled "3GPP TS 36.521-1 V10.1.0 (2012-03) Technical Specification."  References to "TS 36.101" refer to the LTE Standard document titled "3GPP TS 36.101 V10.5.0 (2011-12) Technical Specification."  References to "TS 36.213" refer to the LTE Standard document titled "3GPP TS 36.213 V10.5.0 (2012-03) Technical Specification."

49.     The LTE Standard accurately describes the technical requirements for network products used, and services offered, in an LTE-compliant network.

## CLAIMS FOR RELIEF

50.     The allegations in the following Claims For Relief have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  Plaintiff does not yet have the benefit of any discovery from Sprint.

51.     The Court has not construed the meaning of any claims or terms in the '488 Patent. In providing these detailed allegations, Plaintiff does not intend to convey or imply any particular claim constructions or the precise scope of the claims.  Plaintiff's claim construction contentions regarding the full meaning and scope of the claim terms will be provided in compliance with the case schedule and any applicable orders.

52.     Plaintiff contends that each element of each asserted claim of the '488 Patent is literally present when any of the Accused Services is used on the Sprint LTE network.  If the Court's constructions or other determinations indicate that an element of an asserted claim of the '488 Patent is not literally present, Plaintiff contends that each such element is present under the

18

doctrine of equivalents.  If necessary, Plaintiff will provide more detailed doctrine of equivalents contentions after discovery from Sprint or a claim construction order by the Court.

53.     Upon information and belief, Sprint has had actual knowledge of, should have known of, and/or has been willfully blind to, the '488 Patent since at least January 2012.

54.     Sprint's knowledge of the '488 Patent notwithstanding, Sprint launched the Accused Services in July 2012, thereby making, using, selling and/or offering for sale its services that infringe TC Tech's intellectual property, all despite an objectively high likelihood that Sprint's actions constituted infringement of a valid patent.  Upon information and belief, Sprint either knew or should have known of such infringement of TC Tech's intellectual property rights.

## FIRST CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 5,815,488

55.     Each of the above listed paragraphs is incorporated herein by reference and adopted, as if fully set forth again.

56.     The '488 Patent was filed on Sept. 28, 1995, issued on Sept. 29, 1998, and is entitled "Multiple User Access Method using OFDM."

57.     The '488 Patent is assigned to TC Technology, and TC Technology holds all rights, title, and interest in the '488 Patent. A true and correct copy of the '488 Patent is attached hereto as Exhibit A.

58.     Each of the Accused Services, when used on the Sprint LTE network, infringes claims 1 and 2 of the '488 Patent.  In particular, Sprint either performs, or directs or controls performance of third parties, to practice each limitation of claims 1 and 2 when any of the Accused Services is used on the Sprint LTE network.  As described in the preceding paragraphs, Sprint conditions participation in Sprint's LTE network upon the performance of limitations of each of claims 1 and 2 and establishes the manner or timing of that performance.

19

## INFRINGEMENT OF CLAIM 1

59.     Each of the Accused Services, when used on the Sprint LTE network, practices the relevant elements of claim 1 of the '488 Patent in substantially the same way.

60.     Claim 1(a) of the '488 Patent recites "A method for enabling a plurality of remote locations to transmit data to a central location comprising the steps of…."

61.     Claim 1(a) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

62.     The Sprint LTE network complies with the LTE Standard.

63.     The Sprint LTE network includes LTE base stations and other network infrastructure equipment:[14]



STEPHEN LAWSON
The two Sprint Nextel cabinets on the right can do the work of all the older boxes on the left, plus handle new services.

---

[14] *See* http://www.techhive.com/article/2041624/on-site-at-a-sprint-cell-gear-shrinks-while-coverage-grows.html.

20

> Next to those four boxes is the Network Vision gear, consisting of a smaller cabinet and battery pack. That's where Sprint is running its LTE service on frequencies set aside for it in the 1.9GHz band. The new gear is also much more compact: The work of each of the old cabinets can be done with one rack module, called a "digital unit," in the new box. Alongside those are units for Sprint's LTE service on the same band, plus modules for improved 3G voice service on 800MHz, the band that the company is getting back by closing down Nextel.

64.     Further, multiple consumer wireless devices transmit data to Sprint's LTE network using a given LTE base station.

65.     The LTE standard describes that compliant consumer wireless devices transmit data to a LTE network using a given LTE base station.

66.     Thus, when a consumer wireless device is used with any of the Accused Services on the Sprint LTE network, the wireless device transmits data to Sprint's LTE network.

67.     As described in the preceding paragraphs, Claim 1(a) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

68.     Claim 1(b) of the '488 Patent recites "at each remote location, coding data to be transmitted by translating each group of one or more bits of said data into a transform coefficient."

69.     Claim 1(b) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

70.     The LTE Standard describes that a compliant consumer wireless device produces complex-valued modulation symbols.

71.     For example TS 36.211 at section 7.1 discloses producing "complex-valued modulation symbols":

### 7.1   Modulation mapper

The modulation mapper takes binary digits, 0 or 1, as input and produces complex-valued modulation symbols, $x = I + jQ$, as output.

21

### 7.1.2   QPSK

In case of QPSK modulation, pairs of bits, $b(i), b(i+1)$, are mapped to complex-valued modulation symbols $x=I+jQ$ according to Table 7.1.2-1.

**Table 7.1.2-1: QPSK modulation mapping.**

| $b(i), b(i+1)$ | $I$ | $Q$ |
|---|---|---|
| 00 | $1/\sqrt{2}$ | $1/\sqrt{2}$ |
| 01 | $1/\sqrt{2}$ | $-1/\sqrt{2}$ |
| 10 | $-1/\sqrt{2}$ | $1/\sqrt{2}$ |
| 11 | $-1/\sqrt{2}$ | $-1/\sqrt{2}$ |

72.     As described in the preceding paragraphs, Claim 1(b) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

73.     Claim 1(c) of the '488 Patent recites "associated with a particular baseband frequency in a particular subset of orthogonal baseband frequencies allocated to the remote location."

74.     Claim 1(c) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

75.     The LTE Standard describes that each of the complex-valued modulation symbols is assigned to a particular subcarrier frequency.

76.     For example, TS 36.300 at section 5.2 describes an Uplink Transmission Scheme:

22



### 5.2    Uplink Transmission Scheme

### 5.2.1    Basic transmission scheme

For both FDD and TDD, the uplink transmission scheme is based on single-carrier FDMA, more specifically DFTS-OFDM. It also supports multi-cluster assignment of DFTS-OFDM.

**Figure 5.2.1-1: Transmitter scheme of SC-FDMA**

The uplink sub-carrier spacing $\Delta f = 15$ kHz. The sub-carriers are grouped into sets of 12 consecutive sub-carriers, corresponding to the uplink resource blocks. 12 consecutive sub-carriers during one slot correspond to one uplink *resource block*. In the frequency domain, the number of resource blocks, $N_{RB}$, can range from $N_{RB\text{-}min} = 6$ to $N_{RB\text{-}max} = 110$ per carrier or per CC in case of CA.

There are two cyclic-prefix lengths defined: Normal cyclic prefix and extended cyclic prefix corresponding to seven and six SC-FDMA symbol per slot respectively.

- Normal cyclic prefix: $T_{CP} = 160 \times T_s$ (SC-FDMA symbol #0), $T_{CP} = 144 \times T_s$ (SC-FDMA symbol #1 to #6)
- Extended cyclic prefix: $T_{CP\text{-}e} = 512 \times T_s$ (SC-FDMA symbol #0 to SC-FDMA symbol #5)

77.    Further, the LTE Standard describes that the particular subcarrier frequency is from a subset of frequencies.

78.    For example, TS 36.521-1 at figure 5.4.2-1 describes a channel bandwidth arrangement:



**Figure 5.4.2-1 Definition of Channel Bandwidth and Transmission Bandwidth Configuration for one E-UTRA carrier.**

79.    As described in the preceding paragraphs, Claim 1(c) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

80.    Claim 1(d) of the '488 Patent recites "the particular subset of orthogonal baseband frequencies allocated to each remote location being chosen from a set of orthogonal baseband

23

frequencies, the subsets of baseband frequencies allocated to each remote location being mutually exclusive."

81.     Claim 1(d) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

82.     The LTE Standard describes that the subset of frequencies allocated to each consumer wireless device is chosen from a set of orthogonal baseband frequencies, where the subsets of frequencies allocated to each consumer wireless device is mutually exclusive.

83.     For example, TS 36.300 at section 5.2 describes an Uplink Transmission Scheme:



84.     Further, TS 36.211 at section 5.3.4 describes a mapping to physical resources:

If uplink frequency-hopping with predefined hopping pattern is enabled, the set of physical resource blocks to be used for transmission in slot $n_s$ is given by the scheduling grant together with a predefined pattern according to

$$\tilde{n}_{PRB}(n_s) = \left(\tilde{n}_{VRB} + f_{hop}(i) \cdot N_{RB}^{sb} + \left(\left(N_{RB}^{sb}-1\right) - 2\left(\tilde{n}_{VRB} \bmod N_{RB}^{sb}\right)\right) \cdot f_m(i)\right) \bmod(N_{RB}^{sb} \cdot N_{sb})$$

$$i = \begin{cases} \lfloor n_s/2 \rfloor & \text{inter} - \text{subframe hopping} \\ n_s & \text{intra and inter} - \text{subframe hopping} \end{cases}$$

$$n_{PRB}(n_s) = \begin{cases} \tilde{n}_{PRB}(n_s) & N_{sb} = 1 \\ \tilde{n}_{PRB}(n_s) + \lceil N_{RB}^{HO}/2 \rceil & N_{sb} > 1 \end{cases}$$

$$\tilde{n}_{VRB} = \begin{cases} n_{VRB} & N_{sb} = 1 \\ n_{VRB} - \lceil N_{RB}^{HO}/2 \rceil & N_{sb} > 1 \end{cases}$$

where $n_{VRB}$ is obtained from the scheduling grant as described in Section 8.1 in [4]. The parameter *pusch-HoppingOffset*, $N_{RB}^{HO}$, is provided by higher layers. The size $N_{RB}^{sb}$ of each sub-band is given by,

$$N_{RB}^{sb} = \begin{cases} N_{RB}^{UL} & N_{sb} = 1 \\ \lfloor \left(N_{RB}^{UL} - N_{RB}^{HO} - N_{RB}^{HO} \bmod 2\right)/N_{sb} \rfloor & N_{sb} > 1 \end{cases}$$

where the number of sub-bands $N_{sb}$ is given by higher layers. The function $f_m(i) \in \{0,1\}$ determines whether mirroring is used or not. The parameter *Hopping-mode* provided by higher layers determines if hopping is "inter-subframe" or "intra and inter-subframe".

85.  As described in the preceding paragraphs, Claim 1(d) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

86.  Claim 1(e) of the '488 Patent recites "at each remote location, using an electronic processor, performing an inverse orthogonal transformation on said transform coefficients to obtain a block of time domain data."

87.  Claim 1(e) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

88.  The LTE Standard describes that an inverse FFT ("IFFT") is applied to the complex-valued modulation symbols at each consumer wireless device to obtain time domain data.

89.  For example, TS 36.300 at section 5.2 describes an Uplink Transmission Scheme:

25

### 5.2    Uplink Transmission Scheme

### 5.2.1    Basic transmission scheme

For both FDD and TDD, the uplink transmission scheme is based on single-carrier FDMA, more specifically DFTS-OFDM. It also supports multi-cluster assignment of DFTS-OFDM.



**Figure 5.2.1-1: Transmitter scheme of SC-FDMA**

The uplink sub-carrier spacing $\Delta f = 15$ kHz. The sub-carriers are grouped into sets of 12 consecutive sub-carriers, corresponding to the uplink resource blocks. 12 consecutive sub-carriers during one slot correspond to one uplink *resource block*. In the frequency domain, the number of resource blocks, $N_{RB}$, can range from $N_{RB-min} = 6$ to $N_{RB-max} = 110$ per carrier or per CC in case of CA.

There are two cyclic-prefix lengths defined: Normal cyclic prefix and extended cyclic prefix corresponding to seven and six SC-FDMA symbol per slot respectively.

- Normal cyclic prefix: $T_{CP} = 160 \times T_s$ (SC-FDMA symbol #0), $T_{CP} = 144 \times T_s$ (SC-FDMA symbol #1 to #6)

- Extended cyclic prefix: $T_{CP-e} = 512 \times T_s$ (SC-FDMA symbol #0 to SC-FDMA symbol #5)

90.    As described in the preceding paragraphs, Claim 1(e) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

91.    Claim 1(f) of the '488 Patent recites "at each remote location, utilizing a modulator to modulate said block of time domain data onto a carrier signal for transmission to said central location."

92.    Claim 1(f) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

93.    The LTE Standard describes that each consumer wireless device uses a modulator to modulate the time domain data onto a carrier signal for transmission to the LTE network.

94.    For example, TS 36.211 describes the use of a modulator:

### 5.8    Modulation and upconversion

Modulation and upconversion to the carrier frequency of the complex-valued SC-FDMA baseband signal for each antenna port or the complex-valued PRACH baseband signal is shown in Figure 5.8-1. The filtering required prior to transmission is defined by the requirements in [7].



**Figure 5.8-1: Uplink modulation**

95.     As described in the preceding paragraphs, Claim 1(f) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

96.     Claim 1(g) of the '488 Patent recites "said carrier signal having the same carrier frequency for each remote location."

97.     Claim 1(g) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

98.     The LTE Standard describes that the carrier signal used for transmission to the LTE network is a common carrier for each wireless consumer device.

99.     For example, TS 36.521-1 determination of a carrier for each wireless consumer device:

### 5.4.4     Carrier frequency and EARFCN

The carrier frequency in the uplink and downlink is designated by the E-UTRA Absolute Radio Frequency Channel Number (EARFCN) in the range 0 - 65535. The relation between EARFCN and the carrier frequency in MHz for the downlink is given by the following equation, where $F_{DL\_low}$ and $N_{Offs-DL}$ are given in table 5.4.4-1 and $N_{DL}$ is the downlink EARFCN.

$$F_{DL} = F_{DL\_low} + 0.1(N_{DL} - N_{Offs-DL})$$

The relation between EARFCN and the carrier frequency in MHz for the uplink is given by the following equation where $F_{UL\_low}$ and $N_{Offs-UL}$ are given in table 5.4.4-1 and $N_{UL}$ is the uplink EARFCN.

$$F_{UL} = F_{UL\_low} + 0.1(N_{UL} - N_{Offs-UL})$$

100.     As described in the preceding paragraphs, Claim 1(g) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

27

101.    Claim 1(h) of the '488 Patent recites "receiving at said central location from one or more of said remote locations, one or more blocks of time domain data modulated on one or more of said carrier signals."

102.    Claim 1(h) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

103.    The LTE Standard describes that a given LTE base station receives data from one or more consumer wireless devices.

104.    As described in the preceding paragraphs, Claim 1(h) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

105.    Claim 1(i) of the '488 Patent recites "using a demodulator, demodulating said one or more blocks of time domain data from the carrier frequency signal."

106.    Claim 1(i) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

107.    The LTE Standard describes using a demodulator to perform the reverse of the modulation described above.

108.    For example, the LTE Standard describes using a demodulator to demodulate time domain data from a carrier.

109.    As described in the preceding paragraphs, Claim 1(i) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

110.    Claim 1(j) of the '488 Patent recites "performing said orthogonal transformation on said demodulated time domain data to reconstruct said transform coefficients."

111.    Claim 1(j) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

28

112.    The LTE Standard describes performing a FFT to reverse the IFFT described above. The FFT is used to reconstruct the complex-valued modulation symbols.

113.    For example, TS 36.101 at section F.1 describes that the LTE network uses FFT:



114.    As described in the preceding paragraphs, Claim 1(j) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

115.    Claim 1(k) of the '488 Patent recites "translating said transform coefficients into said data to be translated from each remote location."

116.    Claim 1(k) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

117.    The LTE Standard describes that the LTE network performs the reverse of the process used to produce the complex-valued modulation symbols.

118.    Thus, the LTE Standard describes that the complex-valued modulation symbols are translated into the original data.

119.    As described in the preceding paragraphs, Claim 1(k) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

120.    As described in the preceding paragraphs, each limitation of claim 1 is performed by Sprint or otherwise attributable to Sprint when any of the Accused Services is used on the Sprint LTE network.

29

121.    In particular, Sprint either performs, or directs or controls performance of third parties, to practice each limitation of claim 1 when any of the Accused Services is used on the Sprint LTE network.   Further, as described in the preceding paragraphs, Sprint conditions participation in Sprint's LTE network upon the performance of limitations of claim 1 and establishes the manner or timing of that performance.

122.    Sprint's conduct has caused damage to Plaintiff's business, reputation and goodwill, and Plaintiff seeks monetary damages in an amount to be determined at trial.

## INFRINGEMENT OF CLAIM 2

123.    Each Accused Service, when used on the Sprint LTE network, practices the relevant elements of claim 2 of the '488 Patent in substantially the same way.

124.    Claim 2(a) of the '488 Patent recites "A method for enabling a plurality of remote locations to transmit data to a central location comprising the steps of…."

125.    Claim 2(a) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

126.    The Sprint LTE network complies with the LTE Standard.

127.    The Sprint LTE network includes LTE base stations and other network infrastructure equipment:[15]

---

[15] *See* http://www.techhive.com/article/2041624/on-site-at-a-sprint-cell-gear-shrinks-while-coverage-grows.html.



STEPHEN LAWSON
The two Sprint Nextel cabinets on the right can do the work of all the older boxes on the left, plus handle new services.

Next to those four boxes is the Network Vision gear, consisting of a smaller cabinet and battery pack. That's where Sprint is running its LTE service on frequencies set aside for it in the 1.9GHz band. The new gear is also much more compact: The work of each of the old cabinets can be done with one rack module, called a "digital unit," in the new box. Alongside those are units for Sprint's LTE service on the same band, plus modules for improved 3G voice service on 800MHz, the band that the company is getting back by closing down Nextel.

128.   Further, multiple consumer wireless devices transmit data to Sprint's LTE network using a given LTE base station.

129.   The LTE standard describes that compliant consumer wireless devices transmit data to a LTE network using a given LTE base station.

130.   Thus, when a consumer wireless device is used with any of the Accused Services on the Sprint LTE network, the wireless device transmits data to Sprint's LTE network.

131.   As described in the preceding paragraphs, Claim 2(a) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

132.    Claim 2(b) of the '488 Patent recites "at each remote location, coding data to be transmitted by translating each group of one or more bits of said data into a transform coefficient."

133.    Claim 2(b) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

134.    The LTE Standard describes that a compliant consumer wireless device produces complex-valued modulation symbols.

135.    For example TS 36.211 at section 7.1 discloses producing "complex-valued modulation symbols":

## 7.1     Modulation mapper

The modulation mapper takes binary digits, 0 or 1, as input and produces complex-valued modulation symbols, $x=I+jQ$, as output.

## 7.1.2    QPSK

In case of QPSK modulation, pairs of bits, $b(i), b(i+1)$, are mapped to complex-valued modulation symbols $x=I+jQ$ according to Table 7.1.2-1.

Table 7.1.2-1: QPSK modulation mapping.

| $b(i), b(i+1)$ | $I$ | $Q$ |
|---|---|---|
| 00 | $1/\sqrt{2}$ | $1/\sqrt{2}$ |
| 01 | $1/\sqrt{2}$ | $-1/\sqrt{2}$ |
| 10 | $-1/\sqrt{2}$ | $1/\sqrt{2}$ |
| 11 | $-1/\sqrt{2}$ | $-1/\sqrt{2}$ |

136.    As described in the preceding paragraphs, Claim 2(b) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

137.    Claim 2(c) of the '488 Patent recites "associated with a particular baseband frequency in a particular subset of orthogonal baseband frequencies allocated to the remote location."

138.    Claim 2(c) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

32

139.    The LTE Standard describes that each of the complex-valued modulation symbols is assigned to a particular subcarrier frequency.

140.    For example, TS 36.300 at section 5.2 describes an Uplink Transmission Scheme:



141.    Further, the LTE Standard describes that the particular subcarrier frequency is from a subset of frequencies.

142.    For example, TS 36.521-1 at figure 5.4.2-1 describes a channel bandwidth arrangement:



143.    As described in the preceding paragraphs, Claim 2(c) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

144.    Claim 2(d) of the '488 Patent recites "the particular subset of orthogonal baseband frequencies allocated to each remote location being chosen from a set of orthogonal baseband frequencies, the subsets of baseband frequencies allocated to each remote location being mutually exclusive."

145.    Claim 2(d) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

146.    The LTE Standard describes that the subset of frequencies allocated to each consumer wireless device is chosen from a set of orthogonal baseband frequencies, where the subsets of frequencies allocated to each consumer wireless device is mutually exclusive.

147.    For example, TS 36.300 at section 5.2 describes an Uplink Transmission Scheme:



148.    Further, TS 36.211 at section 5.3.4 describes a mapping to physical resources:

If uplink frequency-hopping with predefined hopping pattern is enabled, the set of physical resource blocks to be used for transmission in slot $n_s$ is given by the scheduling grant together with a predefined pattern according to

$$\tilde{n}_{PRB}(n_s) = \left(\tilde{n}_{VRB} + f_{hop}(i) \cdot N_{RB}^{sb} + \left(\left(N_{RB}^{sb} - 1\right) - 2\left(\tilde{n}_{VRB} \bmod N_{RB}^{sb}\right)\right) \cdot f_m(i)\right) \bmod \left(N_{RB}^{sb} \cdot N_{sb}\right)$$

$$i = \begin{cases} \lfloor n_s/2 \rfloor & \text{inter} - \text{subframe hopping} \\ n_s & \text{intra and inter} - \text{subframe hopping} \end{cases}$$

$$n_{PRB}(n_s) = \begin{cases} \tilde{n}_{PRB}(n_s) & N_{sb} = 1 \\ \tilde{n}_{PRB}(n_s) + \lceil N_{RB}^{HO}/2 \rceil & N_{sb} > 1 \end{cases}$$

$$\tilde{n}_{VRB} = \begin{cases} n_{VRB} & N_{sb} = 1 \\ n_{VRB} - \lfloor N_{RB}^{HO}/2 \rfloor & N_{sb} > 1 \end{cases}$$

where $n_{VRB}$ is obtained from the scheduling grant as described in Section 8.1 in [4]. The parameter $pusch\text{-}HoppingOffset$, $N_{RB}^{HO}$, is provided by higher layers. The size $N_{RB}^{sb}$ of each sub-band is given by,

$$N_{RB}^{sb} = \begin{cases} N_{RB}^{UL} & N_{sb} = 1 \\ \lfloor \left(N_{RB}^{UL} - N_{RB}^{HO} - N_{RB}^{HO} \bmod 2\right)/N_{sb} \rfloor & N_{sb} > 1 \end{cases}$$

where the number of sub-bands $N_{sb}$ is given by higher layers. The function $f_m(i) \in \{0,1\}$ determines whether mirroring is used or not. The parameter $Hopping\text{-}mode$ provided by higher layers determines if hopping is "inter-subframe" or "intra and inter-subframe".

149.    As described in the preceding paragraphs, Claim 2(d) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

150.    Claim 2(e) of the '488 Patent recites "at each remote location, using an electronic processor, performing an inverse orthogonal transformation on said transform coefficients to obtain a block of time domain data."

151.    Claim 2(e) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

152.    The LTE Standard describes that an IFFT is applied to the complex-valued modulation symbols at each consumer wireless device to obtain time domain data.

153.    For example, TS 36.300 at section 5.2 describes an Uplink Transmission Scheme:



**5.2     Uplink Transmission Scheme**

**5.2.1   Basic transmission scheme**

For both FDD and TDD, the uplink transmission scheme is based on single-carrier FDMA, more specifically DFTS-OFDM. It also supports multi-cluster assignment of DFTS-OFDM.

**Figure 5.2.1-1: Transmitter scheme of SC-FDMA**

The uplink sub-carrier spacing $\Delta f$ = 15 kHz. The sub-carriers are grouped into sets of 12 consecutive sub-carriers, corresponding to the uplink resource blocks. 12 consecutive sub-carriers during one slot correspond to one uplink *resource block*. In the frequency domain, the number of resource blocks, $N_{RB}$, can range from $N_{RB-min}$ = 6 to $N_{RB-max}$ = 110 per carrier or per CC in case of CA.

There are two cyclic-prefix lengths defined: Normal cyclic prefix and extended cyclic prefix corresponding to seven and six SC-FDMA symbol per slot respectively.

- Normal cyclic prefix: $T_{CP}$ = 160×Ts (SC-FDMA symbol #0), $T_{CP}$ = 144×Ts (SC-FDMA symbol #1 to #6)

- Extended cyclic prefix: $T_{CP-e}$ = 512×Ts (SC-FDMA symbol #0 to SC-FDMA symbol #5)

154.    As described in the preceding paragraphs, Claim 2(e) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

155.    Claim 2(f) of the '488 Patent recites "at each remote location, utilizing a modulator to modulate said block of time domain data onto a carrier signal for transmission to said central location."

156.    Claim 2(f) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

157.    The LTE Standard describes that each consumer wireless device uses a modulator to modulate the time domain data onto a carrier signal for transmission to the LTE network.

158.    For example, TS 36.211 describes the use of a modulator:

**5.8     Modulation and upconversion**

Modulation and upconversion to the carrier frequency of the complex-valued SC-FDMA baseband signal for each antenna port or the complex-valued PRACH baseband signal is shown in Figure 5.8-1. The filtering required prior to transmission is defined by the requirements in [7].

36



**Figure 5.8-1: Uplink modulation**

159.   As described in the preceding paragraphs, Claim 2(f) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

160.   Claim 2(g) of the '488 Patent recites "said carrier signal having the same carrier frequency for each remote location."

161.   Claim 2(g) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

162.   The LTE Standard describes that the carrier signal used for transmission to the LTE network is a common carrier for each wireless consumer device.

163.   For example, TS 36.521-1 determination of a carrier for each wireless consumer device:

### 5.4.4   Carrier frequency and EARFCN

The carrier frequency in the uplink and downlink is designated by the E-UTRA Absolute Radio Frequency Channel Number (EARFCN) in the range 0 - 65535. The relation between EARFCN and the carrier frequency in MHz for the downlink is given by the following equation, where $F_{DL\_low}$ and $N_{Offs-DL}$ are given in table 5.4.4-1 and $N_{DL}$ is the downlink EARFCN.

$$F_{DL} = F_{DL\_low} + 0.1(N_{DL} - N_{Offs-DL})$$

The relation between EARFCN and the carrier frequency in MHz for the uplink is given by the following equation where $F_{UL\_low}$ and $N_{Offs-UL}$ are given in table 5.4.4-1 and $N_{UL}$ is the uplink EARFCN.

$$F_{UL} = F_{UL\_low} + 0.1(N_{UL} - N_{Offs-UL})$$

164.   As described in the preceding paragraphs, Claim 2(g) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

165.    Claim 2(h) of the '488 Patent recites "receiving at said central location from one or more of said remote locations, one or more blocks of time domain data modulated on one or more of said carrier signals."

166.    Claim 2(h) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

167.    The LTE Standard describes that a given LTE base station receives data from one or more consumer wireless devices.

168.    As described in the preceding paragraphs, Claim 2(h) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

169.    Claim 2(i) of the '488 Patent recites "using a demodulator, multiplying said received one or more blocks of time domain data with in-phase and quadrature carrier signals to obtain in-phase and quadrature baseband signals, converting said in-phase and quadrature baseband signals to digital form, and using an electronic processor, performing said orthogonal transform using said in-phase and quadrature baseband signals as real and imaginary values, respectively, to demodulate said one or more blocks of time domain data from the carrier frequency signal."

170.    Claim 2(i) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

171.    The LTE Standard describes modulating a signal using in-phase and quadrature components of the signal.

172.    For example, TS 36.211 describes processing a signal based on its real ("Re") and imaginary ("Im") components:



### 5.8    Modulation and upconversion

Modulation and upconversion to the carrier frequency of the complex-valued SC-FDMA baseband signal for each antenna port or the complex-valued PRACH baseband signal is shown in Figure 5.8-1. The filtering required prior to transmission is defined by the requirements in [7].

**Figure 5.8-1: Uplink modulation.**

173.    Further, the LTE Standard describes using a demodulator to perform the reverse of the modulation described above.

174.    As described in the preceding paragraphs, Claim 2(i) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

175.    Claim 2(j) of the '488 Patent recites "performing said orthogonal transformation on said demodulated time domain data to reconstruct said transform coefficients."

176.    Claim 2(j) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

177.    The LTE Standard describes performing a FFT to reverse the IFFT described above. The FFT is used to reconstruct the complex-valued modulation symbols.

178.    For example, TS 36.101 at section F.1 describes that the LTE network uses FFT:



179.    As described in the preceding paragraphs, Claim 2(j) of the '488 Patent is met when any of the Accused Services is used on the Sprint LTE network.

180.    As described in the preceding paragraphs, each limitation of claim 2 is performed by Sprint or otherwise attributable to Sprint when any of the Accused Services is used on the Sprint LTE network.

181.    In particular, Sprint either performs, or directs or controls performance of third parties, to practice each limitation of claim 2 when any of the Accused Services is used on the Sprint LTE network.   Further, as described in the preceding paragraphs, Sprint conditions participation in Sprint's LTE network upon the performance of limitations of claim 2 and establishes the manner or timing of that performance.

182.    Sprint's conduct has caused damage to Plaintiff's business, reputation and goodwill, and Plaintiff seeks monetary damages in an amount to be determined at trial.

## JURY DEMAND

183.    Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests entry of a judgment in its favor against Defendants as follows:

40

i)      A declaration that Defendants have directly infringed the '488 Patent;

ii)     A judgement that Defendants' infringement has been willful;

iii)  An award of damages arising out of Defendants' infringement of the '488 Patent sufficient to compensate Plaintiff, as well as any prejudgment and post-judgment interest, in an amount according to proof;

ii)     An award of treble damages for Sprint's willful infringement pursuant to 35 U.S.C. § 284;

iii)    An award of attorneys' fees pursuant to 35 U.S.C. § 285 and as otherwise permitted by law; and

iv)     An award of any such other costs and further relief as the Court may deem just and proper.


 _/s/ Kelly E. Farnan_
Kelly E. Farnan (#4395)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Of Counsel:                                 Wilmington, DE  19801
Lawrence J. Gotts                           (302) 651-7700
LATHAM & WATKINS LLP                        Farnan@rlf.com
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004                      *Attorneys for Plaintiff TC Technology LLC*
(202) 637-2200


Dated:  September 28, 2018

41