IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TC TECHNOLOGY LLC,

    Plaintiff,

v.

SPRINT CORPORATION and SPRINT
SPECTRUM, L.P.,

    Defendants.

No. 16-cv-153-RGA

MEMORANDUM ORDER

Presently before the Court are Defendants' motions for reconsideration of the Court's Order granting Plaintiff leave to add a claim of willful infringement (D.I. 321) and for summary judgment of no willfulness (D.I. 343). I have considered the parties' briefing. (D.I. 322, 333, 344, 348, 353). Because I find Plaintiff fails to meet its burden to demonstrate a genuine issue for trial on willfulness, Defendants' motion for summary judgment is **GRANTED**, and the motion for reconsideration is **DISMISSED AS MOOT**.

### I. BACKGROUND

TC Technology LLC ("TC Tech") filed this action on March 10, 2016, alleging that Sprint Corporation and Sprint Spectrum, L.P. (collectively, "Sprint") infringed U.S. Patent No. 5,815,488 ("the '488 patent") with certain wireless services on its LTE network. (D.I. 1).

I previously allowed TC Tech to amend its complaint to add a claim of willful infringement. (D.I. 316). Sprint then filed the present motion for reconsideration. (D.I. 321, 322). While the motion was pending, a dispute arose over the scope of additional willfulness-

related discovery. The parties filed letters in which Sprint also requested leave to move for summary judgment of no willfulness. (D.I. 377, 378). I granted Sprint's request at the March 27, 2019 discovery conference.

TC Tech's willfulness claim is based on the following events. Sprint received an email on January 9, 2012 from Intellectual Asset Group ("IAG") on behalf of CableLabs, the prior owner of the '488 patent. (D.I. 349, Ex. F). The email offered for sale "5 US patents directed to cable television technologies including: orthogonal frequency division multiplexing (OFDM), mobile phone connection, software copying and bi-directional cable techniques." (*Id.*). Attached to the email was a document titled, "CableLabs Patent Sale Offering Presented by IAG" ("the IAG Offering"), which identified and described the '488 patent. (*Id.*, Ex. F, Ex. G at 9). The email was sent to Charlie Wunsch, then general counsel at Sprint. (*Id.*, Ex. F). Mr. Wunsch forwarded the email to Keith Cowan, who was responsible for LTE strategy (*id.*, Ex. D at 68:17-20), and Harley Ball, Sprint's head patent counsel. (*Id.*, Ex. F; D.I. 344 at 1; D.I. 348 at 2). IAG sent a follow-up email to Mr. Wunsch on February 24, 2012, which Mr. Wunsch again forwarded to Mr. Ball. (D.I. 349, Ex. E). Sprint did not respond to either IAG email. (*Id.*, Exs. E, F).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* The

burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 461.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. ANALYSIS

TC Tech's arguments focus on Sprint's subjective willfulness. (D.I. 348 at 5-6). Under *Halo Electronics, Inc. v. Pulse Electronics*, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his

3

infringement was objectively reckless." 136 S. Ct. 1923, 1933 (2016). Subjective willfulness is met with proof, by a preponderance of the evidence, that "the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362, 1364 (Fed. Cir. 2016) (internal citation and quotation marks omitted). TC Tech alleges both actual knowledge and willful blindness. (*Id.* at 6-7; D.I. 317 ¶ 34).

## A. Actual Knowledge

Sprint argues that there is no evidence that anyone at Sprint formed beliefs regarding the '488 patent or its relationship to Sprint's LTE network. Therefore, TC Tech cannot show that Sprint knew or should have known of its infringement. (D.I. 344 at 4-6).

TC Tech argues that the record shows that Sprint:

> (1) internally modeled and monitored LTE patent royalties, but conducted no patent searches and took no licenses, (2) received the patent offering document detailing the '488 patent, its claims, and its applicability to Sprint's infringing technology on three separate occasions and circulated them around the company within and outside its legal department, yet (3) made no effort to avoid infringement or negotiate a license with IAG.

(D.I. 348 at 6). Only the second point could possibly relate to Sprint's actual knowledge of infringement.

The IAG Offering provides a brief description of the '488 patent but does not draw any connections to Sprint's LTE network. (D.I. 349, Ex. G at 9). The relevant portion states, "The [five] patents in this Portfolio are directed to integrating advanced cable telecommunications technologies including: orthogonal frequency division multiplexing [OFDM], mobile phone connection, software copying and bi-directional cable techniques, and may have significant value in the telecommunications, computing, and IT fields." (D.I. 349, Ex. G at 5). The '488 patent is titled "Multiple User Access Method Using OFDM." (*Id.* at 9). The IAG Offering describes the

4

'488 patent as disclosing "a system using [OFDM] that improves the transmission rate of digital data over a television channel and also provides immunity to signal interference caused by multipath reception." (*Id.*). A separate section provides a general description of OFDM:

> Currently, OFDM is extensively used in wideband digital communication, either through wired or wireless networks. Specific applications include: digital television, audio broadcasting, wireless networking and broadband Internet access. Typical companies in [the OFDM] space may include, for example, . . . AT&T, . . . Verizon, . . . etc.

(*Id.*). TC Tech asserts that AT&T and Verizon are Sprint's two largest competitors. (D.I. 348 at 2).

The IAG Offering does not support a finding of willful infringement. "[M]obile phone connection" is broad but included under the umbrella of "cable telecommunications technologies." (D.I. 349, Ex. G at 5). Likewise, although the '488 patent relates to OFDM, which allegedly applies to "wireless networking," the IAG Offering describes the patented invention as improving transmissions "over a television channel." (*Id.* at 5, 9). LTE is not a cable telecommunications technology and does not involve transmissions over a television channel. TC Tech's only remaining evidence is the statement that "[t]ypical companies" in the OFDM space include two of Sprint's main competitors. (*See id.* at 5). On that record, no reasonable juror could find that Sprint knew or should have known its LTE network was at risk of infringing the '488 patent. Therefore, TC Tech cannot meet its burden to show willful infringement based on the theory that Sprint had actual knowledge of infringement.

## B. Willful Blindness

In my Order granting TC Tech leave to amend its complaint, I found that, at minimum, TC Tech pleaded sufficient facts to support a theory of willful blindness. (D.I. 316 at 7). I applied the same standard as that of Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 6 (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Thus, I accepted the factual allegations in

5

TC Tech's amended complaint as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Specifically:

> (1) in preparation for launching its allegedly infringing LTE services, Sprint internally modeled projected costs of royalties for LTE patents, but did not conduct a patent search and had an in-house counsel policy of not reviewing patent sale offerings, (2) Sprint received a patent offering from IAG in January 2012, six months before launching its LTE services, (3) the IAG offering specifically disclosed the '488 patent, its title, its filing date, a description of its claims, and a figure from the patent, and stated that the '488 patent "may have significant value in the telecommunications fields," including "wireless networking," (4) Sprint's general counsel (Mr. Wunsch) forwarded the IAG offering to a high-level business executive (Mr. Cowan) and Sprint's vice president of intellectual property (Mr. Ball), (5) Sprint received a follow-up email from IAG in February 2012, which Mr. Wunsch again forwarded to Mr. Ball, and (6) Sprint made no effort to design around the '488 patent or negotiate a license with IAG before launching its LTE services.

(D.I. 316 at 6). Based on those allegations, I found TC Tech pleaded a theory of willfulness analogous to that in *Intel Corp. v. Future Link Systems*, 268 F. Supp. 3d 605 (D. Del. 2017).

In *Future Link*, the Court denied summary judgment of no willfulness where Future Link alleged a "panoply of conduct" indicating willful blindness. *Id.* at 623. Intel's engineers admitted that they did not review non-Intel patents to avoid willfully infringing them. Future Link's experts depicted Intel's implementation of the accused technology as identical to the patented embodiments. There was also a lack of evidence that Intel investigated whether its products infringed. Rather, Intel had a corporate atmosphere encouraging employees to "turn a blind eye" to patents. Lastly, Intel was motivated to infringe, continued infringement for a lengthy period, failed to disable patented features when it could do so, and engaged in litigation misconduct. *Id.*

A recent Federal Circuit decision, *SRI International, Inc. v. Cisco Systems, Inc.*, 918 F.3d 1368 (2019), may call into question some elements of *Future Link*. In *SRI*, this Court denied JMOL of no willful infringement largely because Cisco's engineers did not look at the asserted

patents until their depositions. *SRI*, 918 F.3d at 1380-81. The Federal Circuit found willfulness not supported by the record as it was undisputed that Cisco's engineers were "without legal training." *Id.* at 1381. Thus, "[g]iven Cisco's size and resources, it was unremarkable that the engineers—as opposed to Cisco's in-house or outside counsel—did not analyze the patents-in-suit themselves." *Id.* However, unlike *SRI*, *Future Link* addressed a "panoply of conduct" indicating willful blindness. *See Future Link*, 268 F. Supp. 3d at 623. Therefore, even disregarding the fact that Intel's engineers did not review non-Intel patents, I think the *Future Link* Court would have denied summary judgment of no willfulness.

I now find *Future Link* distinguishable. TC Tech's theory of willful blindness is based on Sprint's alleged policy of deliberately ignoring patents. (D.I. 348 at 1-2). The only evidence in support of that policy is Mr. Ball's deposition testimony. (*Id.* at 1-2, 7). Mr. Ball stated that, upon receiving an unsolicited patent offer, if the offer was in fact "really accusing infringement," Sprint "would look and analyze and determine whether there was any need for a license and . . . act appropriately in that regard and do appropriate research." (D.I. 345, Ex. 2 at 182:12-24). However, "if it was simply an offer," Sprint "typically did not engage in those types of patent sales." (*Id.* at 182:25-183:4). He also stated that the IAG Offering "would not be something that . . . would raise [his] interest where [he] would likely open it." (*Id.* at 194:8-22). Further, neither Mr. Wunsch nor Mr. Cowan would have opened the IAG Offering in the "normal course of business," as both would have forwarded it to Mr. Ball's group. (*Id.* at 195:11-196:4).

At most, Mr. Ball's testimony indicates that Sprint considered the IAG solicitations and determined that they did not warrant further investigation. Mr. Ball made clear that his group was responsible for vetting patent offers to determine which offers raised infringement concerns. He determined that the IAG emails did not raise such concerns. That is far different than

7

deliberately ignoring patents.[1] Therefore, TC Tech cannot meet its burden to show willful infringement based on Sprint's willful blindness.

### C. Equitable Estoppel

In the alternative, Sprint argues that TC Tech's willful infringement claim is barred by equitable estoppel. Because I find that TC Tech has failed to make a prima facie case of willfulness, I do not reach Sprint's equitable estoppel defense.

## IV. CONCLUSION

For the foregoing reasons, Sprint's motion for summary judgment (D.I. 343) is **GRANTED**, and Sprint's motion for reconsideration (D.I. 321) is **DISMISSED AS MOOT**.

IT IS SO ORDERED this 31 day of May 2019.

_____
United States District Judge

---

[1] *SRI* implied that failure to analyze asserted patents may support willfulness if the failure was by employees with legal training, such as in-house counsel. *See SRI*, 918 F.3d at 1381. I do not think *SRI* applies here, however, because Mr. Ball did review the IAG solicitations—based on his review, he found no further investigation warranted.