## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TC TECHNOLOGY LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 16-153-WCB |
| | § | |
| SPRINT CORPORATION and SPRINT | § | |
| SPECTRUM, L.P., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants Sprint Corporation and Sprint Spectrum, L.P. (collectively, "Sprint") have filed a Motion to Stay Pending *Ex Parte* Reexamination. Dkt. No. 591. The motion is GRANTED, and this case will be stayed pending the completion of the *ex parte* reexamination of the two asserted claims at issue in this case by the patent examiner in the United States Patent and Trademark Office ("PTO"). The question whether to further extend the stay following the examiner's final action on the reexamination will be addressed at that time.

## BACKGROUND

Plaintiff TC Technology LLC ("TC Tech") filed this action on March 10, 2016, alleging that Sprint infringed claims 1 and 2 of U.S. Patent No. 5,815,488 ("the '488 patent"). On March 23, 2021, T-Mobile USA, Inc., ("T-Mobile") submitted a request for an *ex parte* reexamination by the PTO.[1] The PTO examiner granted T-Mobile's request on May 11, 2021, finding that the references cited in the request raised substantial new questions of patentability. On September 20, 2021, the examiner issued a non-final office action, rejecting both claims as invalid over the new

---

[1] T-Mobile merged with Sprint in April 2020. The caption of this case has not been changed, however, and the defendants are still identified as the two Sprint entities.

prior art.  Specifically, the examiner rejected claim 1 of the '488 patent "under pre-AIA U.S.C. 102(b) as being anticipated by Kahre" (PCT Patent Application Publication No. WO 94-11961) and claim 2 of the '488 patent "under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Kahre in view of Pommier" (a translation of European Patent Application No. EP 0,616,445 B1).  Dkt. No. 592, Ex. B, at 2, 4, 14.

Two days after the office action issued, Sprint filed this motion to stay the proceedings in this case pending the resolution of the *ex parte* reexamination.

## DISCUSSION

The question whether district court proceedings should be stayed when post-grant proceedings are instituted on some or all of the patent claims at issue in the district court litigation has arisen frequently, particularly in the years since the enactment of the Leahy-Smith America Invents Act ("AIA") in 2011.  The principles governing that question have been developed by courts in numerous cases involving different types of post-grant proceedings, including reexamination, *inter partes* review, post-grant review, and covered business methods ("CBM") review.

It is well settled that the power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997).  That inherent authority includes the discretion to stay judicial proceedings pending post-grant proceedings, including reexamination, that will consider the validity of an issued patent.  *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (The court has "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent."); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422,

1426–27 (Fed. Cir. 1988) (Courts have inherent power to stay proceedings, "including the authority to order a stay pending conclusion of a PTO reexamination."); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("When a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved.").

While the authority of district courts to stay litigation pending post-grant proceedings in the PTO was well established before the AIA, the practice has become more common following the enactment of that statute.  Over the past ten years, district courts have come to consider three factors when determining whether to grant a stay pending PTO proceedings with respect to a patent in suit: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Princeton Digit. Image Corp. v. Konami Digit. Entm't Inc.*, Nos. CV 12-1461 *et al*., 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases).  The courts have recognized that granting a stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015) (citing cases); *see also Novoluto GmbH v. Uccellini LLC,* No. 6:20-cv-2284, 2021 WL 2251911, at *2 (D. Ore. May 19, 2021); *RetailMeNot, Inc. v. Honey Sci. LLC*, No. 18-937, 2020 WL 373341, at *3 (D. Del. Jan. 23, 2020);  *Nasdaq, Inc. v. IEX Grp., Inc.,* No. 18-3014, 2019 WL 8268544, at *5 (D.N.J. Sept. 13, 2019).

Courts have adopted those principles based in part on guidance from Congress in several forms.  Most recently, Congress addressed the subject of stays of litigation pending PTO post-

grant proceedings in the 2011 legislation dealing with CBM review.  In the uncodified portion of the AIA directed to CBM review, Congress set forth four factors governing whether a stay should be granted pending CBM review by the Patent Trial and Appeal Board ("PTAB").  Those four factors are:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011).

Those statutory factors largely track the three factors traditionally used by courts in determining whether to grant stays pending post-grant proceedings, with a fourth factor added. *See Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489 (D. Del. 2013) ("This [CBM] statutory test closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination . . . .").  The fourth factor, which requires an inquiry into whether a stay will reduce the burden of litigation on the parties and the court, was intended to ensure that courts apply their discretion to grant stays liberally so as to minimize the duplicative litigation of patent validity issues in parallel forums.[2]  *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2019 WL 3943058, at *3 (D. Del. Aug. 21, 2019).

---

[2] The four-factor test was added to the AIA through an amendment offered by Senator Charles Schumer.  The provision was added in order to encourage district courts to issue stays when district court litigation and post-grant proceedings were co-pending.  Senator Schumer commented: "Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time.  This is unacceptable, and would be contrary to the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation."  157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011).

While Congress's four-factor test for granting stays in the CBM context does not expressly extend to other types of post-grant proceedings, such as *ex parte* reexaminations, courts have found that the policy considerations governing the issuance of stays are similar with respect to all post-grant proceedings.  For that reason, the Federal Circuit and various district courts have held that courts may weigh the fourth factor set forth in the CBM statute when considering staying cases that are co-pending with other types of post-grant proceedings.  *See, e.g.*, *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016); *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366, 2020 WL 5517283, at *3 (D. Del. Sept. 11, 2020); *Neuro Cardiac Techs., LLC v. LivaNova, Inc.*, No. H-18-1517, 2018 WL 4901035, at *2 (S.D. Tex. Oct. 9, 2018); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346, 2013 WL 6044407, at *2 (W.D. Wis. Nov. 14, 2013).  As other courts have done, I will address the "burden of litigation" factor as a component of the factor directed to "simplifying the issues."

The legislative history of the AIA makes it apparent that Congress intended for district courts to be liberal in granting stays pending CBM review.  As Senator Schumer observed regarding the CBM review provision, Congress intended to place "a very heavy thumb on the scale in favor of a stay being granted" once the PTAB instituted CBM review proceedings.  157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011); *see Market-Alerts*, 922 F. Supp. 2d at 490 n.4; *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366, 2019 WL 4740156, at *3 (D. Del. Sept. 27, 2019).

Congress's desire to enhance the role of the PTO in deciding validity questions and to limit the burden of litigation on courts and parties was not restricted to CBM review proceedings.  The AIA's legislative history indicates that Congress viewed both CBM review and *inter partes* review as serving the policy of adjudicating patent validity in an efficient manner.  *See* H. Rep. No. 112-

98, Part I, at 48 (2011) (statutory post-grant proceedings were designed to be "quick and cost effective alternatives to litigation"); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (*inter partes* review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents") (statement of Sen. Charles Grassley); *id.* at S5319 (daily ed. Sept. 6, 2011) (post-grant proceedings, including *inter partes* review, were meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Jon Kyl); *see NFC Tech.*, 2015 WL 1069111, at *5; *see also* Joel Sayres & Julie Wahlstrand, *To Stay or Not to Stay Pending IPR? That Should Be a Simpler Question*, 17 CHI.-KENT J. INTELL. PROP. 52, 56–59 (2018) (discussing indications of Congress's intent in enacting the *inter partes* review framework).

In light of the similar policies underlying the CBM and *inter partes* review proceedings, it is not surprising that courts have applied generally similar analysis to requests for stays in both settings. Moreover, given the close parallels between *inter partes* review and other forms of post-grant proceedings, courts have applied similar stay analysis in the context of reexaminations, such as the *ex parte* reexamination at issue in this case. *See British Telecomms.*, 2020 WL 5517283, at *4; *Goldfinch Design Studio LLC v. Collector's Universe, Inc.*, No. 20-2542, 2020 WL 5017351, at *1 (D.N.J. Aug. 25, 2020); *BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-cv-133, 2013 WL 2462105, at *1 n.1 (D. Del. June 6, 2013); *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505 (D. Del. 2012); *Round Rock Rsch. LLC v. Dole Food Co.*, Nos. 11-1239 et al., 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012). Courts have applied similar analysis in the two settings in recognition of the fact that the benefits of reexamination are the same as those served by CBM review: giving the PTO an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of the need to decide some patent validity issues, and saving the

6

courts from adjudicating infringement claims based on patents of questionable validity.  *See also Gould*, 705 F.2d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).").

That point is made clear by the legislative history of the 1980 statute authorizing the PTO to conduct administrative reexaminations of issued patents.  Early versions of the 1980 statute contained a section providing for a stay of court proceedings during reexamination.  The stay provision was omitted from the final version of the statute on the ground that it was unnecessary. *See id.*  The House Report on the bill that became the 1980 statute explained that a stay provision was unnecessary because "such power [to stay] already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure."  H.R. Rep. No. 96-1307, part 1 (1980), at 4.  Moreover, the House Report anticipated that reexaminations would "provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner," and that reexaminations would permit the validity of patents to be tested in the PTO "where the most expert opinions exist and at much reduced costs."  *Id.*; *see Ethicon*, 849 F.2d at 1426.

Because of the benefits conferred by PTO post-grant proceedings, courts have concluded that the "liberal policy" in favor of staying cases pending CBM review also applies to staying cases pending other post-grant proceedings.  *See British Telecomms.*, 2020 WL 5517283, at *4 (citing cases).  In addition to the numerous decisions cited in *British Telecommunications*, *see id.*, courts in many other cases have noted, and acted on, the liberal policy in favor of issuing stays pending post-grant proceedings.  *See, e.g.*, *Abcellera Biologics, Inc. v. Berkeley Lights, Inc.*, No. 20-cv-8624, 2021 U.S. Dist. LEXIS 161897, at *3 (N.D. Cal. Aug. 26, 2021); *ClearPlay v. DISH Network*

*LLC*, No. 2:14-cv-191, 2021 WL 2515008, at *2 (D. Utah June 18, 2021); *Kirsch Rsch. & Dev., LLC v. GAF Materials, LLC*, No. CV 20-13683, 2021 WL 2434082, at *2 (D.N.J. June 15, 2021); *Novoluto*, 2021 WL 2251911, at *3; *Automated Layout Techs., LLC v. Precision Steel Sys., LLC*, No. 4:20-cv-3127, 2021 WL 1820433, at *4 (D. Neb. May 6, 2021); *Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*, No. CV 19-6224, 2021 WL 831028, at *2 (C.D. Cal. Feb. 25, 2021); *Mobile Tech, Inc. v. Invue Sec. Prods. Inc.*, No. 3:18-cv-52, 2020 WL 9173107, at *2 (W.D.N.C. Mar. 5, 2020).

Although the three-factor test set forth above informs the court's decision whether to issue a stay pending post-grant proceedings, that test merely provides general guidance; it is not a rigid template for decision. Rather, district courts retain the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA*, 830 F.3d at 1362. "[U]ltimately the Court must decide stay requests on a case-by-case basis," and whether a stay should be granted turns in each case on the totality of the circumstances. *British Telecomms.*, 2020 WL 5517283. Courts in numerous other cases have also ruled that stay requests must be decided on a case-by-case basis. *See, e.g.*, *id.* (collecting cases); *IOENGINE*, 2019 WL 3943058, at *3 (collecting additional cases).

With that caveat, I turn to each of the principal specific factors courts have recognized as bearing on whether to grant a motion for a stay pending post-grant proceedings in the PTO.

## I. Simplification of the Issues

The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial. As explained in *NFC Technology*, with respect to *inter partes* review:

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed. Giving the agency the authority to consider the validity of patents in the inter partes review process was

> designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

2015 WL 1069111, at *4; *RetailMeNot*, 2020 WL 373341, at *3 (quoting *IOENGINE*, 2019 WL 3943058, at *8).  The same is true for *ex parte* reexaminations.  *See In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

In *British Telecommunications*, the court described the litigation before it as "a prime example of a case in which a reexamination decision has the greatest likelihood of simplifying issues at trial."  2020 WL 5517283, at *9.  The PTO in that case granted reexamination of the sole claim asserted in the litigation, and the court issued the stay after the PTO granted reexamination, but before the examiner issued an initial decision.  *Id.* at *2.  Here, not only has the reexamination request been granted, but the examiner has already rejected all the asserted claims in a non-final office action.  Given that the reexamination in this case has proceeded farther than it had in *British Telecommunications*, it is even more unlikely in this case than in *British Telecommunications* that the claims will ultimately be confirmed by the examiner in a final action (or pursuant to any subsequent review of the examiner's final action).

In *Virtual Agility, Inc. v. Salesforce.com, Inc.*, the Federal Circuit noted the significance of the simplification factor when post-grant proceedings are instituted on all the claims at issue in the district court litigation.  759 F.3d 1307, 1314 (Fed. Cir. 2014).  The court emphasized that CBM review had been instituted "on all asserted claims of the sole asserted patent."  *Id.*  The post-grant proceedings could therefore "dispose of the entire litigation," which the court referred to as "the ultimate simplification."  *Id.*; *see also Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1372 (Fed. Cir. 2014) ("Certainly [the] simplification factor weighs more strongly in favor of a stay when *all* of the litigated claims" are undergoing review.).  The same is true here, and such

disposal is likely in view of the examiner's non-final office action.  The simplification factor is thus at its apex.

TC Tech argues that even in view of the non-final office action, it is unlikely that the asserted claims will ultimately be canceled.  In its view, a rejection on the first office action during a reexamination is a "virtual certainty" because the examiner would not be likely to find the existence of a substantial question of patentability only to find that the claims are nevertheless valid.  Dkt. No. 593, at 4.  That assertion is speculative; what the record shows that the examiner made an initial finding that the asserted claims are invalid and that to reach that conclusion, the examiner was required to conduct "a thorough study" of the patent and "a thorough investigation of the available prior art relating to the subject matter of the claimed invention."  37 C.F.R. § 1.104(a).  The Federal Circuit, moreover, has made clear that it is inappropriate for a district court, in considering a motion for a stay pending post-grant review, to review the merits of the PTO's determination as to whether the claims are likely invalid.  In *VirtualAgility*, the court made that clear in the analogous context of a motion for a stay pending CBM review:

> The district court erred as a matter of law to the extent that it decided to 'review' the PTAB's determination that the claims of the '413 patent are more likely than not invalid in the posture of a ruling on a motion to stay. . . .  To do so would overwhelm and dramatically expand the nature of the stay determination. . . .  The stay determination is not the time or the place to review the PTAB's decisions to institute a CBM proceeding.

759 F.3d at 1313; *see also Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1317 (Fed. Cir. 2015); *Benefit Funding Sys. v. Am. Cash Advance Ctrs. Inc.*, 767 F.3d 1383, 1386 (Fed. Cir. 2014).

Here, the court must take as true what the examiner has determined with respect to the pending *ex parte* reexamination.  The examiner has determined that there is a substantial question of patentability and, preliminarily, that the claims are invalid in view of the new prior art.  It is not

the court's place to second-guess those determinations. On its face, the examiner's rejection makes it appear likely that the results of the reexamination may well obviate the need for a trial.

TC Tech argues that the two asserted claims are not likely to be canceled at the conclusion of the reexamination. For support, TC Tech relies on PTO statistics showing that most reexaminations do not result in the cancellation of the reexamined claims. Dkt. No. 593, at 4. That argument, however, is misleading. What the statistics show is that following reexamination, roughly 80 percent of the reexamined claims are either canceled or amended. TC Tech contends that the amendment of claims is not necessarily against the patentee's interests, and that only the roughly 13 percent of cases in which the claims are canceled can be regarded as wholly adverse to the patentee. Therefore, TC Tech argues, the past record of reexamination results indicates that it is not likely that the claims in this case will be canceled.

What TC Tech's interpretation of the reexamination statistics overlooks is that the '488 patent has expired, and that the claims of that patent can no longer be amended. The PTO's regulations make this clear. *See* 37 C.F.R. 1.530(j) ("No amendment may be proposed for entry in an expired patent. Moreover, no amendment, other than the cancellation of claims, will be incorporated into the patent by a certificate issued after the expiration of the patent."); *see also In re Rambus, Inc.*, 753 F.3d 1253, 1256 (Fed. Cir. 2014) ("If, as is the case here, a reexamination involves the claims of an expired patent, a patentee is unable to make claim amendments . . . ."). Accordingly, if the examiner finds the challenged claims to be flawed—as the PTO statistics indicate has occurred approximately 80 percent of the time in reexamination proceedings— cancellation of the claims is the only option.[3] For that reason, the fact that a reexamination

---

[3] TC Tech suggests that patent owners may, at least in some cases, strategically use the reexamination process to narrow their patent claims. Dkt. No. 593, at 4. This may be true in cases when the owner requests the reexamination. When a third party requests the reexamination, however, it is unlikely that the patentee would view any rejection by the PTO as a desired strategic

involves an expired patent has been regarded as weighing in favor of a stay.  *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2017 WL 4948560, at *3 (N.D. Cal. Nov. 1, 2017) ("[T]he Court notes that some courts have found that 'the likelihood for cancellation of one or more of the claims may be increased due to the fact that the [patent] is expired and not subject to amendment in the ex parte reexamination proceedings.'") (citation omitted); *Veraseal LLC v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00527, 2018 WL 2183235, at *2 (E.D. Tex. May 11, 2018); *Robern, Inc. v. Glasscrafters, Inc.*, No. CV 16-1815, 2017 WL 132841, at *4 (D.N.J. Jan. 13, 2017).[4]

The statistics cited by TC Tech therefore do not bolster its argument.  To the contrary, they support Sprint's contention that the reexamination in this case is likely to result in the cancellation of the asserted claims.  In sum, I conclude that the reexamination proceeding is likely to simplify this litigation and reduce the burden on the parties and on the court by resulting in the cancellation of the two asserted claims.  The simplification factor therefore cuts strongly in favor of granting a stay.

---

outcome, regardless of whether the reexamination ultimately results in amendment or cancellation. The statistics for third-party-requested reexaminations, such as the reexamination in this case, are similar to patent-owner-requested reexaminations, *id.*, suggesting that nearly 80% of patent owners in those cases are forced to either amend or cancel their claims in view of the new prior art. Because amendment is not an option for an expired patent, it appears likely that the asserted claims will be canceled.

[4] TC Tech argues in passing that the reexamination is unlikely to result in cancellation of the claims, because Sprint's earlier petition for *inter partes* review was rejected.  But the earlier petition was based on different prior art references.  As noted, Sprint's reexamination request was principally based on a reference that was not cited in its *inter partes* review petition because, according to Sprint, it was only discovered recently.

## II.  The State of the Proceedings

As noted, one of the factors courts have considered in determining whether to issue a stay pending post-grant proceedings is the state of the district court proceedings, i.e., how far along the district court case is at the time the motion for a stay is filed.

In this case, claim construction and fact discovery have been completed.  A trial date has been set for November 15, 2021, and thus as of the time the motion for a stay was filed, approximately two months remained before trial.  TC Tech emphasizes that the stay motion has been filed late in the pretrial period, well after the time in which stays have been sought in a number of other cases involving disputes over the issuance of stays pending PTO review.  Nonetheless, stays have been granted in a number of other cases that involved motions for a stay that were filed at times roughly as close to trial as in this case.  *See British Telecomms.*, 2020 WL 5517283, at \*5 (stay granted less than three months before trial); *AGIS Software Dev. LLC v. Google LLC*, No. 2:19-cv-361, 2021 WL 465424, at \*3 (E.D. Tex. Feb. 9, 2021) (stay granted three months before trial); *Ramot At Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:19-cv-225, 2021 WL 121154, at \*2 (E.D. Tex. Jan. 13, 2021) (stay granted six weeks before trial); *CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, 2019 WL 11023976, at \*6–7 (E.D. Tex. Feb. 14, 2019) (stay granted three months before trial); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-11, 2016 WL 1162162 (E.D. Tex. Mar. 23, 2016) (stay granted within two months of trial); *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, No. 03-CV-2223, 2006 WL 1897165, at \*8–10 (D. Colo. July 11, 2006) (stay granted less than three months before trial; court cited cases in which stays were granted as little as 20 days before trial).

While the pretrial proceedings in this case are largely complete, the most burdensome parts of the case for the parties and the court all lie in the future.  *See British Telecomms.*, 2020 WL

5517283, at *6 (recognizing that "the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future"); *see also Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015) (holding that the district court abused its discretion when it denied a stay prior to trial, explaining that "[d]espite the substantial time and effort already spent in this case, the most burdensome task is yet to come"); *AGIS Software*, 2021 WL 465424, at *3 (Even after completion of discovery and pretrial briefing, with jury selection pending, "there remain significant resources yet to be expended by the parties."); *Ramot At Tel Aviv Univ.*, 2021 WL 121154, at *2 (same); *NFC Tech.*, 2015 WL 1069111, at *3 ("[I]t appears likely that the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future.").

Moreover, in light of the ongoing COVID-19 pandemic, the potential health risk to the parties, counsel, witnesses, court staff, jurors, and others cannot be ignored.  In May 2021, the District of Delaware transitioned to "phase 3" of its Covid protocol, which allows for normal court operations, including court proceedings, "at the discretion of the presiding judge in each individual case."  *See* Standing Order Re: Transition to Phase 3 (D. Del. May 25, 2021).  Under that protocol, trial proceedings in the District of Delaware have recently resumed, but at a reduced pace.  While appropriate precautions can be taken to increase the safety of the trial proceedings for those involved, I must be mindful of the risks and uncertainties associated with planning to hold an in-person trial when it is difficult to predict what the likely status of the pandemic will be two months from now.  It is quite possible that, even without taking the reexamination proceeding into account, the uncertainties associated with the course of the pandemic could require a further postponement of the trial.  Those considerations make the imminence of the scheduled trial date a less significant factor than it might be in more normal times.

In *British Telecommunications*, the proceedings were almost as far along as the proceedings in this case: Claim construction and fact discovery were complete, and expert discovery was nearly concluded.  2020 WL 5517283, at *6; *see also Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871, 2019 WL 1276029 (D. Del. Mar. 20, 2019) (granting a stay under similar circumstances).  The relatively advanced stage of the proceedings in this case is entitled to weight, *see British Telecomms.*, 2020 WL 5517283, at *6, but when considered in view of the costs involved in preparing and conducting a trial, along with the potential health risks associated with a trial conducted during the COVID-19 pandemic, the "state of the proceedings" factor cuts only moderately against issuing a stay.  In short, the weight assigned to the state of the proceedings is not dispositive and must be balanced against other factors, including the prospect that a stay— and the PTO's ruling in the interim—will simplify the issues for trial, very possibly obviating the need for a trial altogether, thereby reducing the burden on the parties and the court.  *See id.*

It is worth noting that the stay entered today may be of modest duration.  The PTO examiner has entered a non-final rejection of the two claims in suit, and has directed that a response to that rejection is due within three months, subject to an extension.  TC Tech can expedite that process by filing its submission early without seeking an extension.  A final action by the examiner in the reexamination proceeding therefore may be issued within a reasonably short period of time, at which point I can consider whether to extend the stay depending on the examiner's decision.

### III.  Undue Prejudice or Clear Tactical Advantage

The third factor that courts consider in determining whether to issue a stay of district court litigation pending post-grant proceedings is whether a stay would result in undue prejudice to the non-moving party or provide a clear tactical advantage to the moving party.  In evaluating whether undue prejudice or a clear tactical advantage exists, courts in this district typically examine four

factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *IOENGINE*, 2019 WL 3943058 (collecting cases). These factors, on balance, indicate that a stay will not unduly prejudice TC Tech, nor will it provide a clear tactical advantage for Sprint.

Regarding the timing of the request for reexamination and the request for a stay, Sprint explains that it did not discover the prior art that was the principal subject of the reexamination request until shortly before the request was filed with the PTO.[5] TC Tech does not challenge that assertion, and it seems likely that Sprint would have sought reexamination earlier if it had been aware of the Kahre prior art reference at an earlier date. Although a resolution of the reexamination in Sprint's favor much earlier in the case would have saved TC Tech a large portion of the costs of this litigation to date, the same is true for Sprint. Thus, while Sprint's belated submission of its reexamination request does not speak well for its diligence, the effect of the delay has not been uniquely visited upon TC Tech. Moreover, once the patent examiner entered a non-final rejection of the asserted claims, Sprint acted promptly in seeking a stay. Under the circumstances, I do not regard the delay in filing the request for reexamination as a sufficient ground for denying the stay, whether the delay is considered under the state of the proceedings factor or the prejudice factor.

With respect to the status of the review proceeding, the PTO has already issued a non-final office action rejecting the asserted claims. This court and others have issued stays after a request for *ex parte* reexamination is granted, but before the examiner reaches an initial decision. *See, e.g.*, *British Telecomms.*, 2020 WL 5517283, at *2; *Goldfinch*, 2020 WL 5017351, at *1;

---

[5] TC Tech argues that Sprint was aware of one of the two prior art references on which the examiner relied in finding claim 2 of the '488 patent invalid for obviousness. Although TC Tech's letter brief does not specifically identify that reference, it appears that TC Tech is referring to the Pommier reference, which was not at issue in the anticipation finding with respect to claim 1 of the '488 patent and was only a secondary reference for the obviousness finding with respect to claim 2.

*BodyMedia*, 2013 WL 2462105, at *1 n.1; *Ever Win Int'l*, 902 F. Supp. 2d at 504–05.  Here, the review proceeding is even farther along than in those cases, so the risk of prejudice is lower than in other cases where courts have granted a stay.  Moreover, the potential burden of conducting appellate proceedings in the PTO does not constitute undue prejudice to TC Tech, as it is likely that, even in the absence of a stay, the reexamination and a possible administrative appeal would be ongoing before any judgment in the district court litigation became final.

Finally, with respect to the relationship between the parties, it is undisputed that TC Tech is a patent assertion entity and does not compete with Sprint.  To be sure, TC Tech's interest in the prompt enforcement of its patent rights is entitled to weight.  *See CyWee*, 2019 WL 11023976, at *3; *NFC Tech.*, 2015 WL 1069111, at *2.  However, that factor is present in every case in which a patentee resists a stay, and it is therefore insufficient, standing alone, to defeat a stay motion. *See BodyMedia*, 2013 WL 2462105, at *1 n.1; *see also CyWee*, 2019 WL 11023976, at *3; *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-cv-495, 2018 WL 4002776, at *3 (E.D. Tex. Aug. 22, 2018); *VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-855, 2018 WL 398433, at *3 (E.D. Tex. Jan. 12, 2018); *NFC Tech.*, 2015 WL 1069111, at *2.

That is especially true for non-practicing entities, such as TC Tech, that "do[] not participate in the relevant market and will not suffer any loss of market share or erosion of goodwill due to a stay."  *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *6; *see also SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-706, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("[T]he stay of proceedings with respect to a patent Autel does not practice will not greatly harm Autel."); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, Nos. 12-cv-1107 et al., 2014 WL 1369721, at *5 (D. Del. Apr. 7, 2014) (holding that the plaintiff's status "as a non-practicing entity,

rather than a market participant, suggests there is little risk that it will lose sales or goodwill in the market" if a stay is granted).

TC Tech argues that because Sprint competes with Charter Communications, TC Tech's parent company, a stay of this action would unduly prejudice TC Tech.  TC Tech cites two cases in support of its argument that delays in cases involving "hard-fought" competitors can result in undue prejudice.  Dkt. No. 593, at 2 (citing *SenoRx, Inc. v. Hologic, Inc.*, No. 12-cv-173, 2013 WL 144255, at *8 (D. Del. Jan. 11, 2013); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 3-cv-1431, 2007 WL 1655625, at *5 (N.D. Cal. June 7, 2007)).  In both of those cases, however, the patents were still in effect, and the prospect of injunctive relief was therefore available.  *See Fresenius*, 2007 WL 1655625 (noting the risk that the defendant could "sell its purportedly infringing technology unfettered" during the delay); *SenoRx*, 2013 WL 144255, at *8 (party opposing stay expressing concern about "loss of market share").  Here, the patent-in-suit expired years ago.  There is therefore no prospect of injunctive relief in this case, nor is there any likelihood that TC Tech will be able to obtain injunctive relief against any other party if it should bring any other infringement actions on the patent.  This case is purely about money.  TC Tech's interest (and that of its parent company) in obtaining full compensation for the infringement of its patent rights, if it comes to that, will be protected by the availability of pre-judgment interest on any judgment that is entered following trial.

TC Tech argues that granting a stay in this case would give Sprint a tactical advantage against TC Tech and Charter Communications.  TC Tech points out that Sprint has pending litigation in the same district court against Charter Communications.  A stay in this case, TC Tech contends, would likely result in Sprint's case against Charter Communications being tried before this case.  What is missing from this account is any explanation of why the current sequencing of

trials in the two cases is favorable to TC Tech and why reversing the sequencing of the trials would be favorable to Sprint.  And even if TC Tech would prefer for its case to be tried first, it has no vested interest in the sequencing of the trials.  I therefore perceive no unfair prejudice to TC Tech from the possible effect of a stay on the sequencing of the two trials.

A theme running throughout TC Tech's brief is that Sprint's conduct in this case from the outset has been driven by a desire to delay the trial in this case by any means available.  And as to the future, TC Tech asserts the following:  "The one thing that is certain is that if this case is stayed, Sprint will find more work for the parties and the Court to do in the future.  It will make new motions, seek to add new and different witnesses, identify new purported claim construction disputes, request new PTO proceedings—the list goes on and on—all to try to avoid the next scheduled trial date."  Dkt. No. 593, at 3–4.

TC Tech's hyperbolic rhetoric regarding Sprint's motivations and Sprint's likely conduct in the future is unjustified.  And TC Tech's suggestion that Sprint is to blame for the delays in the case to date is overstated.  In its summary judgment motion, Sprint raised an unresolved question regarding claim construction—hardly an unusual step in a complex patent case.  Judge Andrews agreed with Sprint's proposed construction, but held that Sprint had failed to show that it was entitled to summary judgment on that issue.  Dkt. No. 34, at 13–14.  TC Tech subsequently submitted new expert reports shortly before the initially scheduled trial date that, in Sprint's view, significantly altered TC Tech's position on an important issue in the case.  Sprint requested that the court strike the new expert reports from TC Tech, but in the alternative asked that the court delay the trial to enable Sprint to address the material in the new reports.  Judge Andrews agreed with Sprint that under the circumstances, a postponement of the trial was necessary.  Dkt. No. 463, at 71–73.

The December 2019 trial date was postponed not at Sprint's behest, but because Judge Andrews had a conflict with a criminal trial.  That case was then assigned to me.  I sought the parties' agreement on a trial date, and the parties agreed on August 24, 2020, for trial.  By June of 2020, however, the District of Delaware began removing cases from its trial calendar, a situation that remained in effect throughout the rest of 2020 and into 2021.  With the agreement of the parties, I subsequently settled on November 15, 2021, as a trial date.  In the interim, the parties raised several legitimate legal disputes, which I was able to resolve without affecting the November 15, 2021, trial date.  Sprint has now sought a stay based on the non-final action by the examiner in the reexamination proceeding.

That sequence of events does not reflect a pattern of delay and obstruction on Sprint's part, as suggested by TC Tech.  Nor does it justify TC Tech's charge that Sprint has taken and will continue to take steps in the future "to try to avoid the next scheduled trial date."  I do not find any misconduct on Sprint's part in this regard.

In view of the four factors bearing on the issue of undue prejudice to the patent owner or unfair tactical advantage to the patent challenger, I conclude that there is little risk that granting a stay pending reexamination will result in undue prejudice to TC Tech or confer a clear tactical advantage on Sprint.  As a result, the "undue prejudice or clear tactical advantage" factor does not weigh against granting a stay.

## CONCLUSION

After weighing all the factors that bear on whether to grant a stay pending reexamination of the asserted claims of the '488 patent, I conclude that a stay of this action is warranted.  Accordingly, all further proceedings in this matter are stayed, and the scheduling order for upcoming proceedings in this case is vacated.  The stay will extend until the examiner in the

reexamination proceeding issues a final office action.  Depending on the examiner's disposition of the case, I will determine at that time whether to further extend the stay.

The parties are directed to advise the examiner of the entry of the stay of this litigation.  In addition, if a final action in the reexamination is not entered within six months of the date of this order, the parties are directed to file a report with the court regarding the status of the reexamination proceeding.

IT IS SO ORDERED.

SIGNED this 4th day of October, 2021.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE